Boyd *v.* Operating Engineers Welfare Fund of Eastern Pennsylvania and Delaware et al., Appellants.

Argued September 20, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*Thomas N. O'Neill, Jr.*, with him *Charles A. Wolfe*, for appellants.

*Max Meshon*, with him *Eilberg, Meshon & Brener*, for appellee.

OPINION BY GUNTHER, J., November 16, 1960:

This appeal is from the judgment of the Municipal Court of Philadelphia County, awarding the sum of $2,500.00 with interest on a claim for double indemnity benefits against appellants.

Lena Boyd, widow of Hugh Boyd, filed an action in assumpsit against appellants to recover $2,500.00 accidental death benefits from a union welfare fund. Her husband, during his lifetime, was a member in good standing in the International Union of Operating Engineers Local Union No. 542. On December 5, 1952, he committed suicide. The present trust fund, against which the claim was made, resulted from the merger of two previously existing trust funds. The first of these was the Operating Engineers Welfare Fund of Eastern Pennsylvania and Delaware, created by a declaration of trust dated August 17, 1950, which was deposited with the Fidelity-Philadelphia Trust Company and became known as the Fidelity Fund. The second was known as Local 542 Operating Engineers Welfare Fund, created by a declaration of trust dated June 17, 1952, which was deposited with the Broad Street Trust Company and became known as the Broad Street Fund. These two funds were merged into a third trust fund by declaration of trust dated January 8, 1953, known as the International Union of Operating Engineers Welfare Fund of Eastern Pennsylvania and Delaware or the 1953 Fund. This trust fund was operated by eight trustees nominated equally by the union and the employers.

All moneys constituting the trust funds were contributed by the employers of the respective members of the union and an operating engineer became a beneficiary of the trust fund, prior to merger, to which his employer contributed. The employer of Hugh Boyd contributed to the so-called Fidelity Fund and, after the death of her husband, Mrs. Boyd made application for the payment of benefits from the Fidelity Fund. The sum of $2,500.00 was in fact paid without question and this payment is not involved in the present litigation.

On January 21, 1952, Howard Mills, a member of the Fidelity Fund, committed suicide and his estate was paid $5,000.00 from this trust fund, being $2,500.00 for regular death benefits and $2,500.00 as accidental benefits. This fund ruled that suicide was an accidental death. In September, 1952, the board of trustees of the Broad Street Fund discussed the ruling of the Fidelity Fund in regard to ruling suicide as accidental death, and a resolution was passed to the effect that suicidal death was to be considered as accidental under the terms of the welfare agreement. It is important to note these actions because at the time of the death of Hugh Boyd there was no difference of policy in either fund regarding death by suicide, and when the new fund was created by the merging of the two trust funds previously in existence, an operating policy had been created.

: After the creation of the 1953 Fund and after the receipt of the regular death benefits of $2,500.00, appellee made application for an additional $2,500.00 as extra benefit paid in cases of accidental death. In considering this claim, the trustees of the 1953 Fund ruled that this claim should not be recognized as an accidental death claim. There was testimony to the effect that this ruling was predicated on a discussion that Mr. Boyd was not a good union man and that in his case the claim should not be recognized. On May 11, 1953, therefore, the trustees of the 1953 Fund resolved not to include self-destruction within their definition of accidental death and also resolved that "further payment on the Hugh Boyd claim be contested, that attorney Charles A. Wolfe be requested to proceed with denial of further liability."

The 1953 trust agreement makes no specific provision for the payment of any specified benefits in case of death and the determination of the amount was left completely to the judgment and determination of the

trustees. The trustees, however, concluded that upon the death of an engineer covered by the agreement, the sum of $2,500.00 would be paid. Likewise, the 1953 agreement made no specific provision for the payment of an additional amount in case of accidental death. However, the trustees, exercising their powers to establish a schedule of benefits and to make binding interpretations of the provisions of the agreement, had determined that another $2,500.00 would be paid if the death were accidental within the meaning of the terms as defined by them. These definitions were contained in a separate booklet and provided as follows: "Definition of Accidental Death and Dismemberment. If while eligible to receive Welfare Fund benefits, you suffer, directly and independently of all other causes, bodily injury effected solely through external, violent and accidental means, which results in any of the losses enumerated below within 120 days after the date of such accident, the benefit applicable for such loss will be paid. Such payment will be in lieu of any and all other benefits provided by the Fund. . . . No payments will be made for the Accidental Death and Dismemberment losses resulting from bacterial infections, bodily or mental infirmity, disease, assault of attempted felony by you, or war."

Appellants contend on this appeal that the declaration of trust dated January 8, 1953, vests in the trustees the right to define "accidental death" and that the trustees having concluded that suicide is not an accidental death, in the absence of abuse of discretion, the court below should not have interfered with the exercise of such discretion. Further, they urge that the court below erred in concluding that the resolution of the Broad Street Trust and the payment by the trustees of Fidelity Trust to Mills obligated the trustees of the 1953 Trust Fund to pay accidental death benefits to the appellee. The basic question as we see it,

however, is whether the trustees of the fund in question may pass a resolution, after a claim has arisen, which may be applied retroactively so as to deny a claim otherwise valid.

We start with the proposition that, normally, death by suicide cannot be considered as accidental death. This proposition in the insurance field is so basic that no citation of authorities are required to support it. Here, however, we are dealing with the internal management of a union welfare fund and, in view of the unique resolutions passed by it, the general rules of insurance have no application. Whatever rights to benefits appellee may have had under the trust fund in question had to be determined at the time of her husband's death in December, 1952, and not at a time subsequent to that date.

When Hugh Boyd died, it was the established policy to treat suicides as accidental deaths by both trust funds. Since any claim for accidental death benefits would have been required to be paid out of the Fidelity Trust Fund if still operating as a separate fund, the merging of this fund into a third fund would not change the liabilities involved. The 1953 Trust Fund could not take over the assets of the Fidelity Trust Fund without its liabilities. Having taken over the assets of this fund, the 1953 Trust Fund became obligated to meet the obligations of that fund. We do not mean to imply that the trustees of the new fund could not pass proper resolutions to limit, prospectively, the payment of benefits under certain specified conditions, but any such resolutions could have no retroactive effect. The members of a union or other similar organizations are bound by its laws and regulations and subject to its discipline. However, such rules and regulations work both ways and they must be adhered to by the officers as well who represent the association. Neither may such an organization oper-

ate under rules which attempt to discriminate between members. If certain benefits have been granted to one member, they must be granted to all members. When the trustees of the Fidelity Trust Fund determined that death by suicide is classed as an accidental death insofar as payment of benefits were concerned, and such payment in fact was made on the strength of such determination, all other members of that fund were entitled to the same consideration unless and until such a policy was changed by proper authority.

When the 1953 Trust Fund was created, the trustees did pass regulations relating to accidental death benefits. So long as such resolutions and regulations apply to liabilities arising after the adoption of the rules and regulations, no one may challenge them. However, when the trustees of the 1953 Trust Fund attempted to apply such rules and regulations to a claim already matured, such regulations may be set aside. It is in this respect that the action of the trustees was deemed by the court below to be an abuse of discretion and with which we agree. While a court cannot control the discretion conferred upon a trustee, it may compel him to exercise it in good faith and within the bounds of reasonable judgment and it may also interpose where he fails to use judgment at all because of a mistaken view, either of fact or law, as to the extent of his powers or duties. *In re Brown's Appeal,* 345 Pa. 373, 29 A. 2d 52; *Damiani v. Lobasco,* 367 Pa. 1, 79 A. 2d 268. When trustees attempt to make rulings which are retroactive and divest property rights which have been already vested, such acts cannot be sanctioned as valid acts of authority or discretion. *Thomas v. Kennedy,* 387 Pa. 636, 130 A. 2d 97; *Steel v. Driver Salesmen's Union Local No. 463,* 147 Pa. Superior Ct. 172, 24 A. 2d 20.

Judgment affirmed.