[L. A. No. 15181. In Bank.—October 22, 1935.]

CHARLES W. KABISIUS, Appellant, v. THE BOARD OF PLAYGROUND AND RECREATION OF THE CITY OF LOS ANGELES et al., Respondents.

Charles W. Kabisius, *in pro. per.*, for Appellant.

Ray L. Chesebro and Erwin P. Werner, City Attorneys, Frederick von Schrader and Loren A. Butts, Assistant City Attorneys, and Joseph T. Watson and G. Ellsworth Meyer, Deputies City Attorney, for Respondents.

THOMPSON, J.—About a year prior to October 3, 1930, the petitioner herein had become a permanent employee as a beach guard in the department of recreation and playground of Los Angeles city. On September 6, 1930, he was notified by a Mr. Drake, director of beaches, that he would be laid off at the end of the month owing to a lack of funds. On the day following, September 7th, the supervisor of aquatics, in the presence of Drake and other beach guards, again notified petitioner of the intended layoff. On October 3, 1930, the petitioner received through the mail the following letter addressed to him:

"Dear Mr. Kabisius:

"You are hereby notified that your vacation due you has been adjusted. You will have your vacation up to and including the 8th of October. You will thereafter be terminated on October 9th, according to Rule 9, Section 1 of the charter of the City of Los Angeles, which covers reduction of force for lack of work and lack of funds.

"Yours very truly,
"DEPARTMENT OF PLAYGROUND AND RECREATION,
"C. P. L. NICHOLLS, Supervisor of Aquatics."

Subsequently the civil service commission of the city investigated petitioner's suspension and on March 19, 1931, ordered that he be reinstated on the theory that the department had been employing intermittent beach guards to do the work which should have been assigned to him. Thereafter and on April 12, 1931, petitioner accepted temporary employment for a period of six months, which expired October 11, 1931. Prior to this last-mentioned date petitioner filed this action to compel the department to restore him to his former position and to

certify to the controller of the city his salary for the period from October 10, 1930, to April 11, 1931.

The trial court found, among other things, that the petitioner "was duly and regularly laid off by the respondent Raymond E. Hoyt, the general manager of the Department of Playground and Recreation of the City of Los Angeles, which action of the said Raymond E. Hoyt was duly and regularly approved by the Board of Playground and Recreation Commissioners; that said petitioner was laid off for the reason that said Department of Playground and Recreation had no funds with which to pay the salary of the petitioner herein; that at the time the petitioner herein was laid off, there were one hundred and nine other employees of the said Department of Playground and Recreation laid off for the same reason, to wit, lack of funds." There are additional findings to the effect that it was determined there was not sufficient work to necessitate the employment of all the persons working for the department; that it was further determined that the department would receive an income less than it had anticipated for the fiscal year 1930–1931; that it actually received $116,000 less; and that it was not true there was not a lack of work and a shortage of funds; and that petitioner "was laid off in good faith by the Department of Playground and Recreation for the reason that there was a shortage or lack of work in said department and a lack of funds with which to continue to employ and pay said petitioner".

From a judgment denying him a peremptory writ of mandate the petitioner prosecutes this appeal. It was petitioner's theory in the trial court, disclosed by his allegations, that his employment was not terminated by reason of lack of funds or shortage of work, but because of an unfounded and unjustifiable prejudice against him. He now asserts that the findings to the contrary are not supported by the evidence. We cannot agree with appellant.

The record discloses that the charter appropriates for the financial support of the Department of Playground and Recreation an annual sum of not less than four cents on each one hundred dollars of property assessed for city taxes. In adopting its budget for the fiscal year 1930–1931 the department was advised to calculate its income on an assessed property valuation of $1,900,000,000. However, in September it developed that the assessed value would be but $1,780,960,880,

producing $47,615.65 less tax income for the department than anticipated. In addition, by reason of having to close swimming pools during the summer of 1930, the revenue therefrom dropped $19,615 below that anticipated. From all sources the department received $836,154 while it had calculated its budget on the basis of an income of $952,573. It thus appears that not only did the department foresee a lessening of its annual income but also it did have $116,000 less than it originally expected. The record also discloses that at the time appellant was suspended or his employment terminated the superintendent or general manager of the department proposed and submitted to the Board of Playground and Recreation a list containing the names of 109 others who had been laid off. It further appears that from October, 1930, to and including March, 1931, temporary guards working intermittently, or being subject to call particularly on Saturdays and Sundays and holidays, performed the necessary work. Appellant was offered this kind of work but declined, according to his testimony, because he was requested to resign his regular employment, although, as noted heretofore, he did work six months during the spring and summer months of 1931. We have related sufficient of the testimony to show that the findings in their essential elements are supported by the evidence. It is manifest that the department would be perfectly fair if in an effort to economize it determined that it could function by its intermittent employment of guards instead of hiring men for full time. It is only just to add that the record discloses that a number of economy measures were in the mind of the board other than the suspension of employees.

It is also asserted that the respondents did not have the right to terminate appellant's employment. This contention is founded upon the wording of the charter provisions to which we will now refer. Section 112 (a) in its pertinent provisions reads as follows:

"Any board or officer having the power of appointment of officers, members and employees in any department of the government of the city shall have the power to remove, *discharge* or suspend any officer, member or employee of such department; but no person in the classified civil service of the city, other than an unskilled laborer employed by the day, shall be removed, *discharged* or suspended except *for cause*, which shall be stated in writing by the board or officer having the power

to make such removal, discharge or suspension, and filed with the Board of Civil Service Commissioners, with certification that a copy of such statement has been served upon the person so removed, discharged or suspended, personally, or by leaving a copy thereof at his last known place of residence if he cannot be found. Upon such filing such removal, discharge or suspension shall take effect. Within fifteen days after such statement shall have been filed, the board upon its own motion, may, or upon written application of the person so removed, discharged or suspended, filed with said board within five days after service upon him of such statement, shall proceed to investigate the grounds for such removal, discharge or suspension. If after such investigation said board finds, in writing, that the grounds stated for such removal, discharge or suspension were insufficient or were not sustained, and also finds in writing that the person removed, discharged or suspended is a fit and suitable person to fill the position from which he was removed, discharged or suspended, said board shall order said person so removed, discharged or suspended to be reinstated or restored to duty. The order of said board with respect to such removal, discharge or suspension shall be forthwith certified to the appointing board or officer, and shall be final and conclusive; provided that the order of any appointing board or officer *suspending* any person *because of lack of funds* in such department *shall be final* and *not* be subject to review by said Board of Civil Service Commissioners. If the Board of Civil Service Commissioners shall order that any person removed, discharged or suspended under the provisions of this section be reinstated or restored as above provided, the person so removed, discharged or suspended shall be entitled to receive compensation from the city the same as if he had not been removed, discharged or suspended by the appointing board or officer.'' (Italics ours.)

It is immediately apparent from a reading of the quoted section that in case the suspension is for lack of funds the order of the appointing power is final and that there is no review to be had before the board of civil service commissioners. This must necessarily be so, otherwise the political subdivisions, acting through their regularly elected or appointed officers, might have extreme difficulty in effecting economy measures. In fact the authorities are legion to this effect. In the case of *Fitzsimmons* v. *O'Neill*, 214 Ill. 494

[73 N. E. 797], in which case there was apparently no such saving clause as the one italicized here, the court cites and quotes from a number of cases to support the statement of its own opinion as follows: "That section [a section similar to the restriction of the section here involved against removal except for cause] refers to cases where an officer or employee is removed for some reason personal to himself. His right to be heard in his defense upon written charges as specified in section 12, implies that the cause of his removal is some dereliction, or neglect of duty, or incapacity to perform duty, or some delinquency, which affects his fitness for the position occupied by him. The provision in question does not apply to a case where the incumbent is dismissed for want of funds, or in order to reduce expenses, and when at the time of the dismissal, as was the fact in the case at bar, he has notice of that fact." Reference is made to the case of *People* v. *City. of Brooklyn*, 149 N. Y. 215, 225 [43 N. E. 554], from which the following apt language is quoted: "While these statutes are positive in form, it is clearly not their intent to give to occupants a life tenure, where, upon grounds of economy or for other. proper reasons, the office or position is in good faith abolished." Also a long list of authorities are cited in *Lyon* v. *Civil Service Commission*, 203 Iowa, 1203 [212 N. W. 579], to sustain this statement: "So far as our attention has been directed to the decisions of the courts in other jurisdictions, they unanimously recognize a distinction between the discharge of an employee by his superior for cause and the dismissal or discharge thereof where a reduction in the number is sought." To the same effect are the authorities in our own state. In *O'Neill* v. *Williams*, 53 Cal. App. 1 [199 Pac. 870], a case involving a reduction in the police department, the District Court of Appeal, speaking through Mr. Presiding Justice Waste, said: "It is equally well established by the decisions of the courts of many states that provisions restricting the power of removal, similar to those found in the civil service provision of the Oakland city charter, refer to removals for lapse of duty and the like, and are not a restriction upon the power of the council to abolish as many of the places or offices once provided for as it chooses, by abolishing the offices or places themselves, provided such action be taken in good faith." To the same general effect are *Jenkins* v. *Board of*

*Civil Service Commrs.,* 137 Cal. App. 410 [30 Pac. (2d) 606], and *Livingstone* v. *MacGillivray,* 1 Cal. (2d) 546 [36 Pac. (2d) 622]. The record in this case is singularly free from any evidence that the action of the department was not in good faith.

However, it is contended, inasmuch as the written notice to appellant said his employment was terminated, instead of using the word of the section, to wit, "suspended", that appellant was not effectively removed from the service. Aside from the two oral notices we think the letter clearly expresses the intention of the department to remove appellant from the service as an economy measure. In view of the state of the law hereinbefore set forth, we are constrained to hold that no such narrow interpretation of the section can be indulged. The proviso was intended to declare the right of the city to reduce its forces when such was necessary or advisable as a matter of economy.

The appellant has filed an application to submit additional evidence for the purpose of inducing a reversal of the judgment. The purpose and intent of section 4¾ of article VI of the Constitution and legislation enacted pursuant thereto was fully analyzed and discussed in *Tupman* v. *Haberkern,* 208 Cal. 256 [280 Pac. 970]. It was there said: "We are convinced that it was not the intention of the new law that the reviewing courts should develop generally into trial courts; that it was contemplated that the courts of appellate jurisdiction would exercise the new power sparingly and, as a general rule, would exercise it only where the purpose of the new findings was to constitute a basis for an affirmance of the judgment or a basis for a reversal of the judgment with directions to the trial court to enter a judgment for the appellant." We have read the proposed evidence carefully. If admitted it would not compel a reversal of the judgment with directions to the trial court. It is true that it tends to prove that not all of the 109 other employees were discharged for the expressed reason of lack of funds, but it does establish that some of them were discharged for that very reason. It also tends to prove that at the end of the fiscal year the department closed its books with a substantial net income, but aside from the fact that the department is burdened with the responsibility of determining what economies should be practiced, is the fact that we have no way of telling what portion of the net

income was the result of other measures adopted during the year.

There are no other points requiring discussion.

Judgment affirmed.

Shenk, J., Seawell, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.

Rehearing denied.