81 Cal.App.2d 640 (1947)
Estate of MARY C. CULVER, an Incompetent Person. LUCILLE V. SMITH, as Executrix, etc., Appellant,
v.
THE ANGLO CALIFORNIA NATIONAL BANK OF SAN FRANCISCO, as Guardian, etc., Respondent.
Civ. No. 13367. 
California Court of Appeals. First Dist., Div. Two. 
Sept. 30, 1947.
 Boynton & Boynton and Charles C. Boynton for Appellant.
 Thomas P. O'Brien for Respondent.
 GOODELL, J.
 This appeal is from an order settling the fourth and final account of the respondent as guardian of the estate of Mary C. Culver, an incompetent person. Mrs. Culver died after appealing, and her executrix was substituted for her.
 [1] When the case was called for argument appellant moved for an order admitting in evidence herein three documents *641 which were not before the superior court but came into appellant's possession after the appeal was perfected. The motion was taken under submission with the appeal itself.
 Mrs. Culver's health failed shortly after her husband's death, and on September 24, 1941, she was committed to the State Hospital at Stockton. On March 24, 1942, the bank was appointed guardian of her estate and Edward J. Curran, her brother and her only living relative, was appointed guardian of her person. In October, 1945, Mrs. Culver was discharged from the state hospital and restored to capacity.
 The first, second and third accounts of the bank as guardian were settled without contest while Mrs. Culver was in the state hospital; the fourth and final account was settled after her restoration to capacity.
 It is conceded that on the settlement of the final account the court could, as it did, reexamine the three earlier accounts, as the rule respecting estates of incompetent persons is unlike that in estates of decedents (see Guardianship of DiCarlo, 3 Cal.2d 225, 230, 231 [44 P.2d 562, 99 A.L.R. 990]; Guardianship of Vucinich, 3 Cal.2d 235, 240 [44 P.2d 567]; Guardianship of Giambastiani, 1 Cal.App.2d 639, 643 [37 P.2d 142]; see, also, Prob. Code, 931).
 The principal objections to the final account were directed to the genuineness, execution and validity of two promissory notes in favor of E. J. Curran, both admittedly signed by Mrs. Culver, one for $4,500, dated July 1, 1940, payable one year after date, the other for $1,700, dated March 4, 1940, payable one day after date. Other objections were directed to expenditures made by Curran, either for Mrs. Culver's account before her commitment or thereafter as guardian of her person, but they are not material to this discussion.
 On the day on which the bank was appointed guardian, Curran presented to it a claim against his sister's estate based on the $4,500 note. The bank as guardian, on June 25, 1942, filed a petition for an order authorizing it to pay the debts of its ward (Prob. Code, 1501, 1516). At the hearing it appeared that a balance of $2,800 remained unpaid on the note, and on July 8, 1942, an order was made directing the bank to pay Curran this balance of $2,800 (and $962 for advances and expenses) and ordering that upon the filing of a proper receipt the estate would be "discharged of any and all obligations to the said E. J. Curran. ..." The first account shows the payment on July 15, 1942, of the $2,800. *642
 On April 24, 1944, a petition was filed by respondent for instructions as to the payment of another claim against the estate, reciting that Curran had presented a note for $1,700 dated March 4, 1940. The petition pointed out that the $1,700 note antedated the $4,500 note, and that Curran had not informed the bank that he held this further claim against the estate. It prayed for instructions as to whether it should pay or refuse to pay the note.
 On May 9, 1944, the petition was heard and on the 11th an order was made directing the respondent to pay the $1,700 note. The third account shows its payment on May 11, 1944.
 On the hearing of the final account Mrs. Culver testified that early in 1942, while she was confined in the state hospital Curran on one of his visits prevailed on her to sign a form of promissory note which was not then filled out as to date, amount, maturity or otherwise; that she at first refused, but he persuaded her and she signed the blank form of note, stating to him at the time that her signature was worthless as she was incompetent and confined in an institution. She testified further that on another visit, this time in 1944, her brother under similar circumstances persuaded her, against her protest, to sign two other blank forms of promissory note.
 It is the theory of the appellant that the $4,500 and $1,700 notes (and another note for $4,000 in favor of Curran, dated December 14, 1940, payable five years after its date, but not involved herein) were the three notes to which Mrs. Culver referred.
 It was the claim of Curran, and he testified at the hearing, that in January, 1924, he lent Mrs. Culver's husband $10,000 in currency, for which the husband gave him notes which he had renewed every four years (1928, 1932, 1936), until his death in 1940; that this transaction had been purposely kept from Mrs. Culver by her husband and by Curran because of its secret nature, and that Curran had told his sister about it only after her husband's death, which was in June, 1940; that the notes now in question had been filled out by Mrs. Culver in her own handwriting and signed by her on or about the dates which they bear (which, of course, was before her commitment) and that she had executed them so as to honor and keep alive the obligation of her deceased husband.
 Mrs. Culver branded all this testimony as an "outrageous falsehood," stating that neither she nor her deceased husband *643 ever owed her brother a cent, but that, on the other hand, she had lent him money from time to time, had herself paid the rent of his living quarters and had paid his moving expenses.
 Two handwriting experts called by the respondent expressed the opinion that the handwriting in the body of each note was Mrs. Culver's. A handwriting expert, called as the court's own witness, testified that in his opinion the handwriting in the body of each note was not hers, but might have been Curran's.
 To discredit Curran's testimony it was shown without contradiction that between 1934 and 1940 Curran had been on relief, or at least had held a W.P.A. job, and that as soon as he became eligible for old age pension he had applied for it and continued to receive it into 1942. He was confronted with various applications, in which he had stated under oath that he had no assets exceeding $600 in value at the time when he claimed to hold this $10,000 obligation against his brother-in-law. He explained this apparent inconsistency by saying that he had then considered the $10,000 notes of no value.
 The hearing of the fourth and final account was bitterly contested. There was much testimony on both sides, the hearings being spread over nine court sessions and running into 375 pages of transcript. There was testimony which, it is claimed, corroborates Mrs. Culver's statements as to the signing of the notes in the state hospital. It is not necessary to narrate the testimony in its entirety. The facts already stated are sufficient for an understanding of the importance of the pending motion to present this new evidence in this court.
 It is clear that the order settling and approving the fourth and final account carried with it the implied findings that both the $4,500 and $1,700 notes were filled out by Mrs. Culver in her own handwriting; that they were not procured from her by undue influence or duress; that they were executed by her before she was under legal disability and not while in the state hospital. The two orders instructing the respondent to pay the notes carried the same implied findings and the orders settling the first and third accounts did likewise. *644
 The three documents now sought to be introduced consist of:
 1. A large white envelope with the following typewritten thereon:
 "MrS.W. H. Culver."
 NOT
 To be opened until Feb., 7 1987 unless circumstances dictate an earlier date.""
 2. A letter typewritten on the letterhead of "E. J. Curran Licensed Broker DeYoung Building San Francisco" reading as follows:
 "July 1 1937"
 "To Whom It May Concern:--"
 "Anything of value of which I may appear to be possessed at the time of my death, equities or otherwise, is as a matter of fact the property of my devoted Sister, Mrs. Walter H. Culver, 402 Wilson Ave., Vallejo, Calif., and she is entitled to undisputed possession thereof."
 and purporting to be signed (in ink) "E. J. Curran."
 3. A letter typewritten on the letterhead of "Edward J. Curran 601-602 DeYoung Bldg. Telephone Sutter 7397 San Francisco" reading as follows:
 "July 1, 37"
 "My Dear Mame:--"
 "I have endeavored for years to provide for the day when my spirit will have taken flight, and it will be necessary to make some disposition of the mortal remains. It is not material at this time to recite the details of my efforts suffice it to say they have been unproductive of any material results this brings me to the point where I feel I can do nothing else but make the following suggestion."
 "Had I been successful in making the proper provision my first wish would be to be laid away with my Darling, but I cannot entertain the thought of inflicting this burden on you, therefore suggest that my mortal remains be donated to some medical school, any but University of Cal. This procedure will provide the easiest way out and eliminate all expense. Incidentally I may in this way be able to contribute something to mankind for having lived among men my years. *645 After all it matters not at all just what disposition is made of the remains."
 and purporting to be signed (in ink) "E. J. Curran."
 The appellant claims that had these writings been before the court at the hearing they would have completely discredited Curran's testimony and compelled a favorable ruling on Mrs. Culver's objections.
 The notice of motion to introduce this new evidence was accompanied by affidavits showing that the documents had been in the possession of respondent and that it was not until December 18, 1946 (six months after the account was settled and five months after the appeal was taken) that appellant learned of their existence. This, of course, was a good reason why they were not available at the hearing. Rule 23(b) of the Rules on Appeal (22 Cal.2d 16) permits counteraffidavits to be served and filed, but none was filed. The documents are clearly newly-discovered evidence.
 A motion for new trial is provided in certain probate proceedings, but not with respect to an order settling an account (Prob. Code, 1231.) However, it may be safely said that if three such documents were tendered as newly-discovered evidence in an ordinary civil action under comparable circumstances a motion for new trial would have to be granted. In an article entitled "Fact Finding Power of the Appellate Courts of California," 16 California Law Review 500, at 518, this analogy is drawn in the following apt language: "The basis for admitting such evidence in the appellate court might well be much the same grounds as have been held to justify the granting of a new trial because of newly discovered evidence." If, then, new evidence of this character would call for a new trial, it should persuade an appellate court to receive and consider it as an amplification of the settled record on appeal.
 In Estate of Wirt, 207 Cal. 106, 111 [277 P. 118], the court said: "We have heretofore held that section 956a of the Code of Civil Procedure is not intended to have application to cases wherein the production of original evidence was sought to be permitted in this court and the purpose of the production of such evidence would be to lead us to a reversal of the cause upon appeal. Where, however, it sufficiently appears that the production of such evidence was from any cause prevented when the matter in question was *646 still pending before the trial court for its proper determination, ... it would appear to be clear that in the interest of justice the judgment herein should be reversed, without cost to either party to this appeal, and that the cause should be remanded to the trial court, with instructions to reopen the same and to take such further proceedings therein as are in conformity with the views expressed in this opinion."
 It is true that respondent there conceded that the case should be remanded, but it is reasonably certain that the court would have done so anyway because the appellants had been prevented from getting all their proof before the trial court. This they did on the second trial, and prevailed. (Estate of Wirt, 124 Cal.App. 7 [12 P.2d 95].)
 In the instant case the evidence now proffered was not available, as we have seen, and the case seems to be squarely within the rule announced in the Wirt case.
 The appellant, in our opinion, is entitled to a complete rehearing of the guardian's fourth and final account with the three new documents before the court where their meaning, intent and effect can be fully explored and gone into, and where they may be weighed with all the evidence originally introduced, the same as if they were before the court in the first instance. What we have said presupposes their authenticity. If there is any question on that score it can be raised in the trial court.
 In view of the remanding of this case the following comment should be made on the question of notice, which is discussed in the briefs: prior to the 1943 amendment, section 1554, Probate Code, required that notice of the time and place of the hearing of a guardian's account, together with a copy of the account, should be given to the Director of Institutions or the attorney general at least eight days before the hearing. It does not appear from the record whether such notice was given when the first annual account (which shows the $2,800 payment) was to be heard.
 By the time of the filing of the petition for instructions respecting the $1,700 note, section 1516, Probate Code, had been amended (Stats. 1943, p. 2993) to require a 15-day notice of hearing to the Director of Institutions. It appears that no such notice was given, for only 14 days elapsed from the filing of the petition to the day set for the hearing.
 The motion of the appellant for an order admitting in *647 evidence in this court the three documents heretofore described is granted, and it is ordered that said documents be added to the settled record on appeal as part thereof. The part of the order appealed from is reversed and the cause remanded, with directions to the superior court to rehear said fourth and final account and all issues raised by appellant's objections and exceptions thereto, in their entirety. Each side to pay its own costs on this appeal.
 Nourse, P. J., and Dooling, J., concurred.