36 Cal.2d 416 (1950)
Estate of BERTHA SCHLUTTIG, Deceased. BERTHA CLEMENTS et al., Respondents,
v.
J. HOWARD McGRATH, Attorney General, etc., Appellant.
L. A. No. 20914. 
Supreme Court of California. In Bank. 
Dec. 12, 1950.
 Harold I. Baynton and David L. Bazelon, Assistant United States Attorneys General, Ernest A. Tolin and James M. Carter, United States Attorneys, Clyde C. Downing, Assistant United States Attorney, Joseph W. Bishop, Jr., J. Roger Wollenberg, Joseph Laufer, Valentine C. Hammack, George B. Searls, Lillian C. Scott, Percy Barshay, James L. Morrisson and Isaac N. Groner for Appellant.
 Jerome Politzer, as Amicus Curiae on behalf of Appellant.
 Moore, Howorth & Trinkaus, Henry T. Moore and Walter R. Trinkaus for Respondents.
 Dana Latham, Forrest A. Betts and William J. Currer, Jr., as Amici Curiae on behalf of Respondents.
 EDMONDS, J.
 In a proceeding brought to determine rights to take property under the will of Bertha Schluttig, the superior court found that certain residuary legatees named *418 by her were citizens of Germany or Austria. With a further finding that, at the time of her death, those countries did not grant to citizens of the United States the reciprocal rights required under section 259 of the Probate Code, the court held that the foreign legatees may not share in the estate. Upon an appeal from the decree determining rights under the will, the district court of appeal granted a motion to take additional evidence. Following the report of its referee, the court decided that such evidence justified a reversal of the decree and a new trial.
 The estate of Mrs. Schluttig, a citizen of the United States, consists entirely of personal property situated in California. By her will, which was admitted to probate, she bequeathed the residue of her estate to nieces and nephews, or the children of deceased nieces and nephews, per stirpes. All of the residuary legatees, other than Bertha Clements, are citizens and residents of Germany or Austria.
 The Alien Property Custodian claimed any interests in the estate to which the alien heirs might be entitled. The Attorney General of the United States has become a party to the proceeding as the successor to the Alien Property Custodian.
 During administration of the estate, Mrs. Clements, who is a citizen and resident of the United States, filed a petition for a determination of interests. She alleged that she is the only residuary legatee eligible to inherit under Mrs. Schluttig's will by reason of the residence and citizenship of the other legatees.
 At the time of the death of Mrs. Schluttig, section 259 of the Probate Code provided: "The rights of aliens not residing within the United States or its territories to take either real or personal property or the proceeds thereof in this State by succession or testamentary disposition, upon the same terms and conditions as residents and citizens of the United States is dependent in each case upon the existence of a reciprocal right upon the part of citizens of the United States to take real and personal property and the proceeds thereof upon the same terms and conditions as residents and citizens of the respective countries of which such aliens are inhabitants and citizens and upon the rights of citizens of the United States to receive by payment to them within the United States or its territories money originating from the estates of persons dying within such foreign countries."
 The superior court found that at the date of death, citizens *419 of the United States did not have the right to take by will or succession personal property owned by citizens and residents of Germany or Austria upon the terms applicable to citizens and residents of those countries. A further finding was that United States citizens were deprived of the right to receive by payment to them within the United States money originating from the estates of persons dying within Germany or Austria. Upon those findings, the court concluded that Bertha Clements is the owner of and entitled to distribution of the entire residue of the estate and the nonresident aliens are ineligible to take under the will.
 After entry of this decree, upon stipulation by all parties, it was vacated in part and further evidence was received upon "... the sole issue as to whether the reciprocal rights required under Probate Code section 259 ... did or did not exist in either Germany or Austria at the time of the death of decedent. ..." The evidence then presented consisted generally of the text of laws of Germany and Austria promulgated during the Nazi regime and expert testimony concerning those statutes. Mrs. Clements successfully contended that in Germany and Austria the taking of estates by will or succession depended upon the variable concepts of the Nazi Party as to "anti-social conduct." Under such circumstances, citizens of the United States as "nationals of an enemy nation," could not inherit because of race, religion, and "aims which are inimical to the nation and state." A second decree was then entered in substantially the same terms as those of the one which was vacated.
 When the appeal of the attorney general reached the District Court of Appeal, he moved for leave to produce additional evidence. (Cal. Const. art. VI, 4 3/4; Code Civ. Proc., 956a; Rules on Appeal, rule 23b.) In support of the motion, he averred "That by reason of the unsettled conditions, particularly in regard to Court records and other material evidence, existing in Germany and Austria at the time of trial, appellant had not, after exercising due diligence, been able to locate or obtain any evidence other than such as was produced at the trial. That since said time, appellant has obtained a great mass of additional evidence which in appellant's opinion will clearly and overwhelmingly establish that Germany ..." granted reciprocal rights of inheritance as required by section 259 of the Probate Code. The District Court of Appeal, one justice dissenting, granted the motion and a referee was appointed to take additional evidence. *420
 The voluminous additional evidence consists of testimony by lawyers who were called as experts upon German and Austrian probate law. The record also includes 106 certificates of inheritance issued by German courts having probate jurisdiction during the period from August, 1937, to August, 1945, allegedly determining that certain residents of the United States were beneficiaries of German estates. Among other documents received in evidence are 37 decrees or orders, issued from 1940 to 1944, appointing curators for beneficiaries of German estates residing in the United States, copies of some foreign statutes and case files of German probate courts which show the procedural steps taken in the administration of certain estates.
 Upon the basis of the additional evidence, the judgment was reversed and a new trial ordered. This evidence, it was held, "... in large part clearly constituted newly discovered evidence" which was not available until after the appeal was taken. If presented to the trial court, it would have compelled the granting of a new trial. In summary, said the District Court of Appeal, it creates a conflict with the evidence produced at the trial and presents questions of credibility of witnesses which an appellate court is not in a position to determine.
 Following that decision, upon the petition of Mrs. Clements, this court granted a hearing. She attacks the action of the District Court of Appeal in taking and considering additional evidence, asserting that such procedure is authorized only for the purpose of affirming the judgment appealed from and terminating the litigation. No adequate showing was made, she asserts, that, with due diligence, the evidence presented to the referee could not have been produced by the attorney general at the trial. In any event, she says, the new evidence is merely cumulative and should not be considered.
 The attorney general takes the position that rule 23b of the Rules on Appeal confers upon an appellate court the right to hear newly-discovered evidence and, upon such evidence, reverse the judgment and remand the cause for a new trial. He also relies upon the asserted failure of the petitioner to show any facts from which it may be inferred that the District Court of Appeal abused its discretion in receiving additional evidence.
 Section 956a of the Code of Civil Procedure provides: "In all cases where trial by jury is not a matter of right or where *421 trial by jury has been waived, the Supreme Court or a District Court of Appeal may make findings of fact contrary to, or in addition to, those made by the trial court. Such findings may be based on the evidence adduced before the trial court either with or without the taking of evidence by the court of appellate jurisdiction, pursuant to such rules as the Judicial Council may prescribe."
 "The said courts of appellate jurisdiction may, for the purpose of making such findings or for any other purpose in the interest of justice, take, pursuant to such rules, additional evidence of or concerning facts occurring at any time prior to the decision of the appeal and may give or direct the entry of any judgment or order and make such further or other order as the case may require. This section shall be liberally construed to the end, among others, that whereever possible causes may be finally disposed of by a single appeal and without further proceedings in the trial court, except where the interest of justice requires a new trial." (Emphasis added.)
 In the case of Tupman v. Haberkern, 208 Cal. 256, 269, 270 [280 P. 970], this court said: "... that by the adoption of section 4 3/4 of article VI of the Constitution and the enactment of section 956a of the Code of Civil Procedure it was not intended to convert the appellate tribunals of this state into triers of fact, nor to abrogate the general rule that findings of the trial court founded on substantial evidence are conclusive on appeal: that the effect of the new law is to create and establish an exception to the general rule; that the primary and principal purpose of this exception is to enable the reviewing courts to make contrary or additional findings on the record presented or on new evidence taken, to the end that the judgment be affirmed or modified and affirmed and the litigation be terminated; that when the judgment appealed from must be reversed and a new trial is ordered, either pursuant to a general order of reversal or a specific remanding of the cause for a new trial, findings of fact by the reviewing court become inappropriate and unauthorized; and that when the judgment appealed from is to be reversed and the trial court is to be directed to enter a judgment for the appellant the reviewing court may make findings in support of the judgment so to be entered, but this power should be exercised with caution, and only when it may be declared, as a matter of law, that the respondent could not make a substantial showing in support of his cause if a new trial *422 were had, or that the respondent could not, or should not in the interests of justice, make or be permitted to make a further showing upon a retrial if one should be had."
 "We are convinced that it was not the intention of the new law that the reviewing courts should develop generally into trial courts; that it was contemplated that the courts of appellate jurisdiction would exercise the new power sparingly and, as a general rule, would exercise it only when the purpose of the new findings was to constitute a basis for an affirmance of the judgment or a basis for a reversal of the judgment with directions to the trial court to enter a judgment for the appellant." (Tupman v. Haberkern, supra, at p. 269.)
 In Estate of Wirt, 207 Cal. 106, 111 [277 P. 118], the section was again considered. It was held that the statute "is not intended to have application to cases wherein the production of original evidence was sought to be permitted in this court and the purpose of the production of such evidence would be to lead us to a reversal of the cause upon appeal." However, a new trial was granted, not upon the basis of additional evidence taken, but because one of the litigants had been prevented from introducing that evidence in the court below and both parties agreed to a new trial.
 The question was also presented in Kabisius v. Board of Playground & Recreation, 4 Cal.2d 488 [50 P.2d 1040], and it was held that an application to produce additional evidence is properly denied where the proposed evidence, if admitted, "... would not compel a reversal of the judgment with directions to the trial court." (4 Cal.2d at p. 494.) And in Donovan v. City of Santa Monica, 88 Cal.App.2d 386, 397 [199 P.2d 51], permission to present new evidence was refused because it was but cumulative of that presented at the trial.
 Despite these decisions, in Estate of Culver, 81 Cal.App.2d 640 [184 P.2d 738], the appellant was permitted to introduce in evidence certain documents which would tend to discredit the respondent's testimony upon the principal issue in the case, to the end that the judgment should be reversed and a new trial ordered. This ruling was based upon affidavits showing that the documents were in the possession of the respondent and the appellant did not learn of their existence until five months after the appeal was taken. However, the court erroneously relied upon the Wirt case in which both parties conceded the propriety of introducing such evidence before the proper tribunal and expressly waived all objections to a new trial. *423
 [1] No sound reason appears to explain why the evidence presented by the attorney general in the present proceeding "... was not produced or offered in the superior court." (Rules on Appeal, rule 23b.) Considered most favorably, it is merely cumulative of conflicting evidence adduced at the trial, and it affords no basis "... for a reversal of the judgment with directions to the trial court to enter judgment for the appellant." (Tupman v. Haberkern, supra, at p. 269.) [2] The procedure authorized by section 956a of the Code of Civil Procedure is not a substitute for a motion for a new trial upon the basis of newly discovered evidence. Any implications to the contrary in Estate of Culver, supra, are expressly disapproved.
 Considering the decree upon the basis of the evidence before the superior court, the attorney general contends that, in excluding the foreign heirs from sharing in the Schluttig estate, an improper construction was placed upon section 259 of the Probate Code. Complaint is also made that certain evidence was improperly admitted. [3] He further argues that the question as to the existence of reciprocal rights of inheritance is one of law rather than of fact, and the determination of it was clearly erroneous.
 But the issue before the superior court required a consideration not only of the existence of the foreign statutes but a finding as to their effect based upon the translation of them and their practical application by the courts of the respective countries. The parties did not agree as to the correct translation of the statutes and each stressed uncertainties and ambiguities which required explanation. Moreover, it was shown that the right to inherit in the foreign countries depended upon certain policies of the Nazi regime. Upon all of these subjects, both parties presented considerable testimony by experts.
 In Hawi Mill & Plantation Co., Ltd. v. Finn, 82 Cal.App. 255 [255 P. 543], the questions were whether a particular writing was a sufficient consent under a certain Mexican law, its interpretation and effect, and whether the writings in question complied with the statutory provisions. The trial court found that the document met the legal requirements and on appeal it was contended that the question should be reexamined as a question of law. In holding to the contrary, it was said that "... where a foreign law is founded on the unwritten law of a foreign country, such as the common law or the civil law, the question is regarded as one of fact to be *424 found by the trial court as a fact, and where the question to be determined arises upon the statute law of a foreign country and the statute itself is all that is before the court, the question becomes one of law. But when the construction of the statute is a controversial question, as it is in this case, which invites the testimony of experts, it likewise becomes a question of fact." (82 Cal.App. at pp. 262- 263.) In reaching this conclusion the court quoted at length from Compania Trans. de Petroleo v. Mexican Gulf Oil Co., 292 F. 846, which is to the same effect. (And see El Paso Electric R. Co. v. Carruth, (Tex.Civ.App.) 208 S.W. 985; People v. Tufts, 167 Cal. 266 [139 P. 78]; Ryan v. North Alaska Salmon Co., 153 Cal. 438 [95 P. 862]; and 2 Cal.L.Rev. 313.)
 Considering the nature of the evidence before the trial court, it is clear that the issue to be determined involved questions as to the existence, translation, interpretation and effect of the laws of Germany and Austria. Upon these subjects, the superior court heard highly conflicting testimony by experts upon the laws of those countries and their application under given circumstances. The determination of the issue, therefore, was one of fact, and the finding of the trial court, if supported by substantial evidence, will not be disturbed on appeal. (Hawi Mill & Plantation Co., Ltd. v. Finn, supra, at p. 255.)
 The attorney general's attack upon the decree consists, in part, of a comparison of the background and qualifications of two witnesses who testified as experts. He contends that the superior court erroneously relied upon the testimony of Dr. William B. Stern, who was called by Mrs. Clements, rather than that of Felix S. Tucker, who appeared as a witness on behalf of the foreign legatees. The gist of the argument is not an attack upon Dr. Stern's qualifications but an insistence that Mr. Tucker has had much more experience. [4] However, the extent of an expert's knowledge goes to the weight of his testimony, rather than to its admissibility, and the amount of credence to be given to Dr. Stern's testimony was a question for the trier of fact. (Howland v. Oakland Consol. St. Ry. Co., 110 Cal. 513 [42 P. 983]; People v. Hinkle, 64 Cal.App. 375 [221 P. 693].)
 The principal argument by the attorney general is that the trial court misconceived the purpose and effect of section 259 of the Probate Code and therefore erroneously received evidence concerning the political philosophy and structure of the Nazi government. More specifically, he contends that *425 the denial of inheritance rights to certain minority groups is not a material fact if the rule is applied equally to both American and German members of such groups. As he presents the record, the evidence is clear that any discriminatory inheritance laws of the Nazi government were retroactively repealed by the Allied Control Council. It is equally certain, he argues, that the laws of Nazi Germany were void ab initio in Austria.
 [5, 6] The position taken by the claimant is that section 259 of the Probate Code requires that the matter of inheritance in the foreign country be governed by enforceable rights according to law. Contending that such rights did not exist in Germany and Austria at the time of the testatrix's death, considerable evidence was introduced which supports the conclusion that inheritance was not a matter of legal right but was subject to the arbitrary discretion of Nazi administrators, acting in accordance with Nazi ideology and laws which rendered void dispositions which were contrary to "a healthy national sentiment" or to "considerations" which the decedent must have had toward "the national community." Clearly, when it is shown that the taking of estates by testamentary disposition or succession is a matter of sufferance determinable in accordance with directions of the Nazi officials and their concepts of national sentiment, there is no "reciprocal right" as that term is used in the Probate Code.
 Also, the claimant advanced substantial evidence of direct discrimination against citizens of the United States because of their citizenship or residence. There was evidence to the effect that on April 3, 1945, United States citizens were within the class of persons prohibited from taking by will because they were "enemies of the State." Comments upon German law, shown to have been relied upon in the probate courts of that country, cited as examples of legacies which would be void, dispositions to nationals of an enemy nation, to a foreign freemasonry organization, or to "enemies of the State or organizations inimical to the State." Under certain laws, according to this evidence, naturalized citizens of the United States who, because they were born in Germany were considered by the Nazi government to be German nationals, would not be allowed to inherit property in Germany. The basis for barring them from taking property by will or succession was said to be that the failure of such persons to return to Germany for military service resulted in loss of *426 German "nationality" and deprivation of inheritance rights for them and their families.
 Without reciting in detail all of the evidence before the superior court, it is sufficient to say that there is adequate support in the record for the trial court's finding that, upon the date of Bertha Schluttig's death, citizens of the United States were not permitted to take personal property by succession or testamentary disposition upon the same terms and conditions as residents and citizens of Germany and Austria. Also, our citizens had no right to receive payment within the United States of proceeds of the estates of German and Austrian decedents. Upon these findings, the superior court correctly concluded that Bertha Clements is solely entitled to the residue of the estate of Bertha Schluttig.
 The judgment is affirmed.
 Gibson, C.J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.