[Civ. No. 33141. Second Dist., Div. Three. Sept. 19, 1968.]

NORMAN ELLIOTT, as Special Administrator, etc., Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; SECURITY-FIRST NATIONAL BANK, as Trustee, et al., Real Parties in Interest.

Enright, Elliott & Betz, Norman Elliott and Michael J. Fitzpatrick for Petitioner.

No appearance for Respondent.

Samuel J. Crawford, Jr., Melby, Crickard & Anderson and Jack A. Crickard for Real Parties in Interest.

McCOY, J. pro tem.*—This is a proceeding for a writ of mandate compelling the Superior Court for Los Angeles County to hear and determine on the merits a motion and a petition for instructions filed during her lifetime by Aline P. Logan as beneficiary of the testamentary trust under the will of her deceased husband, and a petition for instructions filed after her death by the special administrator of her estate.

The decree of distribution entered August 2, 1962, in Matter of Estate of John A. Logan, by which Security-First National Bank was appointed as trustee, provided in part that the net income from the "Aline Logan Trust" shall be paid to John Logan's wife, Aline, during her lifetime, or until she remarries. The decree further provided that "If the payments from this trust to which ALINE LOGAN [is] entitled shall be

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

insufficient, in the discretion of the Trustee, to provide for the reasonable support, care and comfort and for the reasonable expense in case of illness or accident, the Trustee may pay such beneficiary or apply for . . . her benefit so much of the principal as the Trustee may deem proper or necessary for that purpose." It also provides that "all discretions conferred upon the Trustee shall be absolute, and their exercise conclusive on all persons interested in this trust." Aline Logan did not remarry before her death at her home in Cuernavaca, Mexico, on February 26, 1968. The successive income beneficiaries of the trust are Mary L., J. Marshall, and Gordon M. Pearson and Marjorie C. Warson.

In November 1966 the trustee filed a petition for instructions seeking an order authorizing the sale of one of the parcels of real property in order to realize cash or liquid assets, alleging that the cash "may be" necessary for the benefit of Aline Logan, as well as for other purposes of administration. Objections were made to such sale and the petition was denied upon the ground that the matter was one resting within the discretion of the trustee.

In 1967 the trustee filed its Fifth Account and Report. Aline filed objections thereto, and also filed a petition for instructions. In her objections she charged the trustee with neglect of duty and failure to exercise discretion in providing for her reasonable needs. The bases of her objections to the account and of her petition for instructions are essentially identical: That she has been receiving $450 per month from the trust; that this amount is insufficient and that $1,000 per month is a reasonable amount for her support and care and the expenses of her illness. The petition for instructions contains more detailed allegations, such as that petitioner "is 77 years old, very ill with a cardiac condition and other infirmities, is bed-ridden and requires constant medical attention, nursing and medication." She alleges that the net income from the trust is not sufficient to increase the monthly payments and asks that the trustee be ordered to sell sufficient assets from the corpus to provide $1,000 per month. Reasonable fees for her attorneys were also sought.

Although objections to the above petition were filed by persons having an interest in the trust, the trustee filed nothing. A hearing was held on January 5, 1968. Following some testimony in support of the petition, the court overruled Aline's objections to the account "without prejudice, however, to a complete determination of all issues related to her petition for instructions." Hearing upon the petition for in-

structions was continued to February 28, 1968, upon the condition that the trustee shall send a representative of its trust department "to visit the income beneficiary and petitioner Aline Logan at her home in Cuernavaca, Mexico and to report as set forth below. Counsel for any party to these proceedings, or their duly authorized representative, shall be permitted to propound questions to the representative of the bank or suggest specific lines of investigation for such representative and to accompany him on his investigation or to make such independent investigation as they desire. . . . Said . . . representative of trustee shall inquire into all matters pertaining to the state of health and physical situation of petitioner as well as matters requested by counsel and submit his report with an original to the court not later than February 18, 1968, . . ."

The trustee's representative, together with the attorneys for Aline Logan and the objectors, went to Cuernavaca, Mexico, in late January, and the bank made its investigation and filed its report which concludes with the statement that Mrs. Logan's present monthly income of $514, which includes the $450 paid to her as net monthly income from the trust, "does not allow Mrs. Logan to meet her projected monthly expenses of $739.56. The Trustee Bank, subject to the final review of it's [sic] Trust Administration Committee and the order of this Court, proposes to list for sale it's [sic] interest in a parcel of realty (under the assumption that it can obtain the approval of the owners of the remaining interest) for the purpose of obtaining sufficient liquidity to exercise its discretion in favor of the income beneficiary and make such reasonable distributions, as from time to time it deems proper."

At the hearing on February 28, two days after Mrs. Logan's death, the matters then before the court were continued for further hearing to April 2, 1968. The minute order states that "The court expressly reserves jurisdiction at said continued hearing to consider all matters incidental to the petition of Aline Logan filed December 11, 1967, including the motion of her counsel for attorney's fees."

Petitioner was appointed special administrator and as such filed a motion to be substituted in Aline Logan's place in the pending proceedings. He also noticed a motion to "(1) vacate and set aside the 'Order Setting [sic] Fifth Account Current, etc.,' dated January 9, 1968, and/or clarify the ambiguity as to the issues determined thereby (as set out in the Declaration of Norman Elliott attached hereto) ; or in the alternative, for a new trial on the issue of the trustee's performance of the

trust with respect to the payments to the income beneficiary, ALINE P. LOGAN in the accounting period, August 9, 1966-August 8, 1967, . . .'' In his points and authorities filed in support of his motion to be substituted in the proceedings in place of Mrs. Logan petitioner made the following introductory statement: ''By her 'Petition' and her 'Objections' to the Bank's Fifth Account (12/11/67), ALINE LOGAN charged the Bank with neglect of duty and failure to properly discharge its office during the period of the Fifth Account (8/9/66—8/8/67), as the authorities prescribe. *Coberly* v. *Superior Court,* 231 Cal.App.2d 685 [42 Cal.Rptr. 64] (and cases cited). Her cause of action clearly survived her death. Probate Code, § 573. The real questions now presented are: (1) Can Aline's Special Administrator be given relief in accordance with the facts proven, in excess of the prayer of the Petition; i.e., can he recover damages for the Trustee's defaults during the accounting period and/or Aline's life (if proven) when Aline did not specifically pray for such relief; (2) Is the Special Administrator entitled to recover from the Trustee for Aline's funeral expenses; (3) Are attorneys' fees and expenses for the services of Aline's attorney and the Special Administrator's attorneys payable from the trust.'' On March 29, 1968, both of these motions were continued by a judge of the respondent court to April 2, to be heard by a commissioner of the court sitting as a judge pro tem.

On April 2, 1968, the court granted the motion substituting Norman Elliott as Special Administrator in the pending proceedings. The court had before it on that date (1) the petition of Aline P. Logan for instructions directing trustee to sell assets, and (2) petitioner's motion to vacate or clarify the January 9 order settling the Fifth Account or, in the alternative, for a new trial. After receiving testimony and certain exhibits in evidence, including the report of the trustee's investigation, both matters were continued to April 24, 1968.

On April 4, 1968, petitioner, as special administrator, filed a petition for an order instructing the testamentary trustee to pay certain debts incurred by Mrs. Logan before her death, and to pay the expenses of her funeral, together with petitioner's expenses for his trip to Mexico with the representative of the trustee and reasonable attorney's fees as Mrs. Logan's attorney in the proceedings noted above in December 1967 and January 1968. Opposition to this petition was filed by the real parties in interest and the matter came on for hearing on April 19 before a judge of the respondent court. The minute order of that date states: ''Following argument

by counsel, the court determines that the petition is properly before the Probate Court and overrules the objections to the petition based on contentions that it is not properly before the Probate Court. The hearing on the merits of the petition is continued to April 24 at 9:30 AM and transferred to Department West 'J' to be heard at the same time before the same Judge as other matters in this case.''

On April 24 Mrs. Logan's petition for instructions, together with the motion of the special administrator to clarify the order of January 9, 1968, or, in the alternative, for a new trial, and his petition for instructions, were all on the calendar for hearing before a commissioner of the court sitting as a judge pro tem. His disposition of these matters is shown by the minute order of that date which reads: ''Counsel argue. The court finds that by reason of the [death]* of the beneficiary Aline Logan on February 26, 1968, all matters involved in all pending petitions have become moot. IT IS THEREFORE ORDERED that all petitions are ordered dismissed. *Estate of Baird* (1955) 135 Cal.App.2d 333, 341-42 [12-4] [287 P.2d 365].'' Petitioner contends that by this order the court erroneously refused to hear and determine the matters before it on the merits, and that under the rules stated in *Robinson* v. *Superior Court,* 35 Cal.2d 379 [218 P.2d 10], he is entitled to a writ of mandate compelling the court to exercise its jurisdiction. We agree.

█ In *Robinson, supra,* the court said (pp. 383-384): ''The law is well settled that a trial court is under a duty to hear and determine the merits of all matters properly before it which are within its jurisdiction and that mandate may be used to compel the performance of this duty. This is so even where the trial court's refusal to pass on the merits is based on the considered but erroneous belief that it has no jurisdiction as a matter of law to grant the relief requested. As stated in *Temple* v. *Superior Court,* 70 Cal. 211, 212 [11 P. 699], 'the court cannot, by holding without reason that it has no jurisdiction of the proceeding, divest itself of jurisdiction, and evade the duty of hearing and determining it.' Mandate will issue to compel a hearing and determination of the merits where the court has merely sustained an objection on jurisdictional grounds and left the proceeding pending. [Citations.] The writ is also available where the trial court has disposed of a matter by an order dismissing it or denying relief on the

---

*As written, the minute order reads in part: ''The court finds that by reason of the *debts* of the beneficiary,'' etc.

sole ground of lack of jurisdiction. [Citations.] Thus, there is no distinction, insofar as the availability of the writ is concerned, between cases where the court merely refuses to proceed because of its erroneous belief that it has no jurisdiction, and those in which the court makes a ruling disposing of the matter on the sole ground it has no jurisdiction. In either case if the effect is to preclude a hearing and judgment on the merits of a matter properly before the court, and there is no other adequate remedy, mandate will lie to test the question of jurisdiction.''

 It seems clear from the record in the case at bench that the court refused to proceed because of its erroneous belief, based on the death of the income beneficiary, that it had no jurisdiction to hear the motion and the two petitions. We are satisfied that the court had jurisdiction to hear those matters, notwithstanding Mrs. Logan's death, and that it should be required to do so.

Section 573 of the Probate Code as amended in 1961 reads, so far as relevant here : ''Except as provided in this section no cause of action shall be lost by reason of the death of any person but may be maintained by or against his executor or administrator. . . . When a person having a cause of action dies before judgment, the damages recoverable by his executor or administrator are limited to such loss or damage as the decedent sustained or incurred prior to his death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had he lived, and shall not include damages for pain, suffering or disfigurement. . . . Nothing in this section shall be construed as making assignable things in action which are of such a nature as not to have been assignable prior to the enactment of the 1961 amendment to this section.''

Witkin says that section 573 of the Probate Code was amended in 1961 to state a comprehensive rule of survivability, and that there are no longer any nonsurvivable causes of action. (Witkin, Cal. Procedure, 1967 Supp., Actions, §§ 177a, 180, 181, pp. 315-317.) Even before the amendment, under former section 573, the right to contest a will was held to be a chose in action arising out of the ''violation of a right of property'' and survived the death of one having the right to contest. (*Estate of Baker,* 170 Cal. 578, 587 [150 P. 989] ; *Estate of Field,* 38 Cal.2d 151, 154 [238 P.2d 578].) It would therefore appear that Mrs. Logan's right to enforce the trust (Civ. Code, § 863), in essence an action for the recovery of property, survived her death.

1. *The Beneficiary's Petition.* Before her death Mrs. Logan filed her petition for instructions requiring the trustee, in substance, to invade the assets of the estate to the extent necessary to meet her needs. On February 28, 1968, two days after her death, the court continued the matter for further hearing, expressly reserving its jurisdiction to consider all matters incidental to this petition.

In dismissing this petition the respondent court relied on *Estate of Baird,* 135 Cal.App.2d 333 [287 P.2d 365], where it is said (pp. 341-342) : "The relation of Margaret as a beneficiary of the trust terminated on her death. The provision for the payment to Margaret of the trust income with power to invade the corpus to make $300 a month, limits the gift to her to her life. It did not survive her death, and no right of payment to her estate followed her death. If we assume that by reason of the fact that if the net income did not amount to $300 a month the trustees had the power to invade the corpus to make that amount, Margaret had an equitable estate in the trust assets . . . such estate terminated on her death. The fact that she may have had an equitable estate during the life of the trust cannot be held to support a legal estate in remainder predicated thereon."

In our opinion *Baird* does not reach the question involved in the case before us. Here no attempt is being made to secure any of the income accruing subsequent to Mrs. Logan's death, nor is any claim asserted to the effect that she had a legal interest in the assets which vested in the estate; nor is there any question of unpaid income which accrued before her death. We are concerned with a proceeding which was pending at the time of her death which, in effect, was one to enforce the terms of the trust as to invasion of the corpus. Such a proceeding would seem to be a cause which would survive to be continued by her administrator, to recover such amounts as she would have been entitled to receive to date of death. We can only speculate as to whether the court would give retroactive effect to any increased payments, or whether they would have commenced as of the date of the order or at some future time. Petitioner, as attorney for Mrs. Logan, appears to concede that her petition speaks prospectively only and that "no specific relief was prayed for as to the trustee's past acts and omissions." At the hearing on January 5, when Mrs. Logan's objections to the fifth account and her petition for instructions were first before the court, the following occurred: "MR. ELLIOTT: I may say, your Honor, the only

objection that we have to the account arises from the fact that the authorities say that in order to challenge the trustee's discretion or failure to act you must object to the account. We do not object to the items per se except insofar as they reflect a deficiency between the payments made to my client and her reasonable needs for care, comfort, support and medical expense, so, that's the only objection to the account in that the trustee has failed to do what we say it should have done during the last accounting period. THE COURT: Could I grant your petition and still settle the account as presented? MR. ELLIOTT: You would be settling it as modified by the granting of the petition for something to be done in the future, I think, your Honor. We're not asking for a surcharge, in other words. THE COURT: All right. It would be a direction for action which, if taken, then would be reflected in the accounting for the next period—MR. ELLIOTT: Yes, your Honor. THE COURT: (Continuing)—in the Sixth Account. Do you agree, Mr. Crawford? MR. CRAWFORD [attorney for the trustee]: Possibly if it would be consummated in one twelve-month period. The action that would be directed to be taken might not be completed in that time. THE COURT: Then I'm going to treat the objections as more or less a nominal procedural technicality that enables me to pass on the petition and work into this from the account itself.''

The real parties in interest contended that ''The future prospective Order never came into existence because Aline Logan died on February 26, 1968. Thus, the petition which was filed in order to get a prospective future order was rendered moot.'' It was also contended that none of the petitions filed by Mrs. Logan or by her administrator ''attempted to qualify under the above Code Section 573. None of the petitions seek to recover '. . . such loss or damage as the decedent sustained or incurred prior to his death . . .''' These contentions are not tenable.

In *Estate of Mullins,* 190 Cal.App.2d 413 [12 Cal.Rptr. 3], the life beneficiary was to receive ''whatever shall be required for [her] proper care, education, support and reasonable recreational needs, using the net income and whatever of the principal may be necessary.'' A guardian was appointed for the incompetent life beneficiary and he was paid $200 per month for her care. After the death of the life beneficiary, the guardian filed his final account which showed that he had expended the sum of $1,728.67 more on behalf of his ward than he had received from the trustee. He filed a petition in

the probate proceeding "TO ENFORCE THE TERMS OF TRUST AND TO INSTRUCT AND REQUIRE TRUSTEE TO PAY PETITIONER FOR EXPENDITURES MADE IN THE CARE AND SUPPORT" of the life beneficiary. A hearing was held and the court determined that it, sitting in probate, had no jurisdiction in the matter but that it should be determined in an adversary proceeding in the civil court. It also held that since the trustee had made monthly payments of $200 to the guardian in accordance with court order it would be improper for him to wait and accumulate deficits before asking for an increase. In reversing the decision, the appellate court states (p. 416) : "As we view the matter the proper fulfillment of the provisions of the trust required that before any part of the trust property could properly be delivered to the grandnephew of deceased all obligations incurred for the care and support of Dorothy Pelligreen should be paid by the trustee." After determining that the probate court had jurisdiction, and should not have refused to pass on the merits, the court says (p. 418) : "There is no merit in respondent's contention that all interest of the deceased beneficiary ceased with her death and that the residue then passed to the remainderman and that there was therefore no fund from which further claims could be paid. The fact that the death of the ward intervened and that there was a gift over by the terms of the trust should not defeat the claim since it would be an anomalous case if because of the death of a beneficiary the just expenses of past maintenance could not be met simply because of the fortuitous circumstance of death before the funds could be transferred. . . .

"It is stated in 2 Scott on Trusts, section 128.4 (2d ed.), at page 944, that where a trust is created for the support of a beneficiary it is a question of interpretation of the terms of the trust whether after the death of a beneficiary the trustee can properly pay the debts of the beneficiary for his support. The inference is that he is authorized to pay such debts, and where it would be an abuse of discretion not to pay them the trustee can be compelled to do so."

The interpretation of the present trust would be a matter for the trial court in a hearing on the petition upon the merits. Numerous contentions are made and questions raised which go to the merits of the matter, and it may well be that upon such a hearing the court will determine that Mrs. Logan was not entitled to an increase for any period of time prior to the date of her death. However, it is our conclusion that the matter did not become moot upon her death, that the cause

survived, and that the petition was improperly dismissed. (Cf. *Poon* v. *Poon*, 244 Cal.App.2d 746, 752-753 [53 Cal.Rptr. 365].)

2. *Motion of Special Administrator.* By this motion petitioner, as special administrator, sought to have the order settling the fifth account of the trustee vacated or clarified or, in the alternative, a new trial on the issue as to the trustee's performance of its trust with respect to its payments to Mrs. Logan.

It does not appear that this is a case in which a motion for a new trial is permitted under section 1231 of the Probate Code. (See *Estate of Hilde*, 112 Cal.App.2d 189, 190 [246 P.2d 79]; *Estate of Culver*, 81 Cal.App.2d 640, 645 [184 P.2d 738].) Thus the motion for a new trial was properly dismissed, albeit for the wrong reason.

The motion to vacate or clarify was filed on March 8, 1968, after the death of Mrs. Logan. Neither the trustee nor the objectors in their opposition appear to have made any contention that the administrator did not have the right to make this motion. The order of January 9 was appealable (Prob. Code, § 1240). Although no appeal was taken, the right existed in Mrs. Logan and the order had not become final at the time notice of motion was filed.[1] It would therefore appear that the administrator, when he was substituted in the pending proceedings, could either appeal or, by this motion, seek to vacate or clarify the order. The questions raised were not moot because of Mrs. Logan's death on February 26 and, regardless of the merits thereof, the petition should not have been dismissed.

3. *Petition of Special Administrator for Instructions.* This petition was filed on April 4, 1968, and purports to be a petition for instructions under section 1120 of the Probate Code, seeking to compel the trustee to pay certain debts of the life beneficiary incurred before her death.

The trust specifically provides for the payment of reasonable expense of Mrs. Logan in case of her illness. The general rule is that a trust for support and maintenance should be interpreted as including an obligation to pay the reasonable funeral expenses of the beneficiary. (2 Scott on Trusts, (3d ed. 1967) § 128.4, p. 1026; Restatement of Trusts Second,

[1]Since petitioner has stated that, as the attorney for Mrs. Logan when the order was made, he never received notice of the order (Code Civ. Proc., § 664.5), the 180-day provision of rule 2, California Rules of Court, is applicable.

§ 128, com. (e); *In re Swinson's Estate,* 167 Pa. Super 293 [74 A.2d 485, 18 A.L.R.2d 1231]; Annotation, 18 A.L.R. 2d 1236.) As indicated by *Estate of Mullins, supra,* 190 Cal. App.2d 413, 418, payment of the just expenses of Mrs. Logan's maintenance is not precluded simply because of the fortuitous circumstance of her death.

Again, it would seem that the question of interpretation is for the respondent court on the hearing on this petition. On that hearing the court should determine whether the obligations listed in the petition, or any part thereof, should be paid. It is apparent that the issues raised by this petition are not moot because of Mrs. Logan's death even though some of those expenses, i.e., those relating to her funeral, were not incurred until her death. As we see it, petitioner here is seeking only to enforce rights vested in Mrs. Logan during her lifetime. In *Estate of Field,* 38 Cal.2d 151, 155 [238 P.2d 578], it is stated that "the administratrix of the widow who owned the right has the same power to pursue it by commencing proceedings to revoke probate as such administratrix would have had to continue the proceedings if the widow had died during the pendency of the contest." Accordingly, it seems clear that a claim for payment as to any items which constitute reasonable expenses of care, support and comfort to date of death, including expenses of the last illness, as well as funeral expenses (if the trust be so interpreted), is a right of the life beneficiary which may be pursued by her administrator by proceedings commenced after her death.

We find nothing in the decree of distribution which in any way alters the conclusions we have reached. As noted above, the decree, which directs the trustee in its discretion to invade the corpus of the estate when necessary to provide for the reasonable expenses of the beneficiary, also provides that "all discretions conferred upon the Trustee shall be absolute, and their exercise conclusive on all persons interested in this trust." Notwithstanding this broad language, it is still the rule that "Whether good faith has been exercised, or whether fraud, bad faith or an abuse of discretion has been committed is always subject to consideration by the court upon appropriate allegations and proof. (*Estate of Marre,* 18 Cal.2d 184 [114 P.2d 586]; *Estate of Heard,* 107 Cal.App.2d 225 [236 P.2d 810, 27 A.L.R.2d 1313]; *Estate of Smith,* 23 Cal.App.2d 383 [73 P.2d 239].) The Restatement of Trusts states the general rule that 'It is against public policy to permit the settlor to relieve the trustee of all accountability to the

courts.' (§ 187, comment k.) '' (*Estate of Ferrall*, 41 Cal.2d 166, 173-174 [258 P.2d 1009].)

Let a peremptory writ issue commanding the respondent court to hear and determine on the merits: (1) the petition of Aline Logan for instructions to the trustee; (2) the motion of the special administrator to vacate or to clarify the order settling the fifth account of the trustee; and (3) the petition of the special administrator for instructions to the trustee.

Ford, P. J., and Moss, J., concurred.