# Richey's Estate.

*Decedents' estates—Wills—Life estates—Power to consume—Maintenance and support—Allowance.*

1. Where a person has two funds to draw upon for living expenses, one of his own individual estate, and the other from the estate of another in which he has a life interest, with power to consume, in the absence of evidence to the contrary, there is a presumption that he would expend the latter before drawing upon the former.

2. A testator devised a life interest in his property to his wife with power to consume "so much of the principal as she may find necessary for her comfortable maintenance and support," appointed her executrix with authority to sell his real estate, and gave the remainder to collateral relatives.   The wife sold the real estate, paid certain debts and charges and made certain investments.   Thirty-seven years thereafter she died and her executor filed her account as executrix of her husband's estate, wherein he charged himself with certain sums which came into decedent's hands from the sale of real estate, and claimed credit for a lump sum expended in his decedent's lifetime for maintenance and support, embracing living expenses, doctors' bills, medicine, help, washing, etc.   The court admitted evidence to show the position in life occupied by the wife, the style and manner in which she maintained herself, and concluded that she must have spent, for her comfortable maintenance and support, in addition to her own small income, during the years following her husband's death, at least the amount for which credit

was claimed, and dismissed exceptions to the adjudication of the auditing judge. *Held,* no error.

3. In such case, it was error to allow two items claiming credit for the funeral expenses of the wife and for placing a stone over her grave, in the absence of anything in the will of her husband authorizing an expenditure from the proceeds of his estate for such purposes.

Argued Oct. 4, 1915. Appeal, No. 217, Oct. T., 1915, by E. C. Richey, James M. Lemon, Ada R. Stewart and Helen R. Moore, from decree of O. C. Indiana Co., Dec. T., 1914, No. 15, dismissing exceptions to adjudication, in Estate of James M. Richey, deceased. Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Modified and affirmed.

Exceptions to adjudication. Before TELFORD, P. J.

The opinion of the Supreme Court states the facts.

The court dismissed the exceptions. E. C. Richey, James M. Lemon, Ada R. Stewart and Helen R. Moore appealed.

*Errors assigned,* among others, were in dismissing the exceptions.

*Ernest Stewart,* for appellants.

*J. N. Banks,* with him *Wishart & Dickie,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, January 3, 1916:

James M. Richey died in 1877, testate, leaving a wife, but no children. After directing the payment of debts, the expenses of settling his estate, and a legacy of $2,000, he devised to his wife, Harriet, all his property during her life. He appointed her executrix with authority to sell his real estate as she might see fit and power to invest the proceeds as she deemed best. In the event of the sale of any part of his real estate, he gave her the

interest on the purchase-money and so much of the principal as she might find necessary for her comfortable maintenance and support. Finally, he provided that, if his widow left no children, the remainder of his estate, at her death, should go to certain collateral relatives.

The testator owned a house and lot in the Borough of Saltsburg, a farm, and six acres of land. There was not enough personalty to pay his debts, and, on application to court, leave was granted to raise $1,500 by mortgage on real estate; this was done, and, in 1879, the executrix filed an account charging herself with the amount of the personal estate and the money raised on the mortgage, aggregating $3,338.39, the whole of which was consumed in the payment of debts, the widow's $300, and expenses of administration.

The real estate was not remunerative, and in 1884 Mrs. Richey sold the farm for $8,000, which was paid in installments. Out of this money, she paid the $1,500 mortgage debt, which, with interest, etc., then amounted to $1,899.75, and the legacy of $2,000; she invested $1,-350 in the erection of a frame dwelling on the Saltsburg lot, and lost $500 through the failure of a bank. In 1891 she sold the six-acre lot for $468.75, in 1910 she sold the old house with the part of the lot on which it stood for $2,000, and prior to her death, in July, 1914, she sold the new house and the remaining part of the lot in Saltsburg for $2,500. After Mrs. Richey's death, her executor filed an account of the estate of her late husband, wherein he charged himself with the moneys which came into his decedent's hands since the filing of her first account, and took credit for moneys paid out, leaving a balance of $1,418.49 for distribution among the collateral heirs named in the will of James M. Richey. The accountant did not charge himself with the $468.75 realized from the sale of the six-acre lot, stating he had no knowledge of this sale when his account was made up, but he agreed to a surcharge of that amount, at the same time asking for a credit of a like sum, to cover money

used by the testatrix in her lifetime for maintenance and support; this being allowed, the balance for distribution was left as originally stated in the account.

Mrs. Richey from time to time, paid expenses of keeping up the real estate—taxes, water rent, repairs, municipal charges, etc.—for which she kept vouchers; but she did not take receipts for, or keep an account of, her personal living expenses.

The principal controversy at bar concerns a comprehensive claim by the accountant to cover money expended by his decedent in her lifetime for maintenance and support. He placed a general item in the account, embracing living expenses, doctors' bills, medicines, help in house, washing, and other expenses of like character, without any particularization, amounting to $2,695.07, which was subsequently raised to $3,163.82, by adding thereto the amount of the surcharge of $468.75, as previously stated; this total credit $3,163.82 was allowed, and is complained of on the present appeal.

It appears that none of the items included in the account as stated covered Mrs. Richey's personal living expenses, excepting the $3,163.82 in question. In other words, so far as the account shows, during the thirty-seven years between the death of Mr. Richey and that of his widow, the only amounts expended by her for maintenance and support are comprehended in the original credit item of $2,695.07, subsequently raised to $3,163.82. In making up his account, Mrs. Richey's executor itemized wherever he had vouchers. He knew that he had $1,418.49 cash on hand belonging to the James M. Richey Estate; he added this amount to his vouched items of credit and deducted the total from the sum of the debit items charged on the other side of his account, and thus arrived at what he claims must have been the sum of Mrs. Richey's expenditures for comfortable maintenance and support.

The court below received testimony to show the position in life occupied by Mrs. Richey, the style and man-

ner in which she maintained herself, her state of health, etc., and on this testimony the auditing judge concluded that she must have spent at least the amount claimed, i. e. $3,163.82, in addition to the small income which she received from her husband's estate, for her comfortable maintenance and support during the long period of years after Mr. Richey's death. Although the testimony in the case does not show exactly how much the income from Mr. Richey's estate amounted to, yet it appears that the rents and interest on investments produced but a comparatively small annual sum for the use of the widow. It further appears that Mrs. Richey was constantly attended by two doctors; that one of these doctors was dead, and the other's testimony was not available, since he had removed from the neighborhood.

Under the peculiar circumstances of this case, we feel that the court below did the best it could to verify the accounts when the auditing judge received the testimony to which we have referred, and this court is not convinced of error in the conclusion that Mrs. Richey must have spent the amount allowed, which, together with the income from her husband's estate, would fall short of $250 a year for her comfortable maintenance and support.

It is true that Mrs. Richey received $1,670.15 from her father in 1885, and that she left an estate of her own, aggregating, in cash and securities, $5,689.43; but where a person has two funds to draw upon for living expenses, one his own individual estate, and the other from the estate of another in which he has a life interest with power to consume, in the absence of evidence to the contrary, there is a presumption that he would expend the latter before drawing upon the former; and there is no evidence at bar sufficient to overcome that presumption. This being the case, we cannot say the court below erred when it concluded that the amount received by Mrs. Richey from her father's estate might well have increased to the sum left by her at the time of her death,

and that the $5,689.43 in question must be viewed as the estate of Mrs. Richey and not as belonging in any part to the estate of James M. Richey, deceased (see Baylor's Est., 249 Pa. 5).

There were two other items of credit claimed in the account and allowed by the court below, one of $256.65, to cover the funeral expenses of Mrs. Richey, and the other of $95, for a stone to place over her grave; this was error. There is nothing in the will of James M. Richey that justifies an expenditure out of his estate for either of these items: See Lawall v. Kreidler, 3 Rawle 300.

The court below admitted the will of Mrs. Richey, dated April 13, 1914, in evidence, for the purpose of proving a statement therein to the effect that the only property she then had on hand belonging to the estate of her late husband was the piece of real estate which she subsequently sold for $2,500; but, since it appears from the opinion of the auditing judge that, in reaching his decisions in the case, this piece of evidence was in no wise relied upon, it is not necessary to pass upon the assignment of error which complains of its admission.

The record is remitted, with direction to surcharge the accountant with the two credit items last referred to; in other respects the decree of distribution is affirmed, the costs to be paid out of the estate of James M. Richey, deceased.