## Swinson Estate.

294

Argued March 24, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH and ARNOLD, JJ. (ROSS, J., absent).

*Charles H. Weidner,* with him *Stevens & Lee,* for Adelaide Manning, appellant.

*Darlington Hoopes,* for The Scholarship Fund of Reading, appellant.

OPINION BY RHODES, P. J., July 20, 1950:

These two appeals are from the final decree of the Orphans' Court of Berks County dismissing exceptions

to its adjudication of the trustee's account in the estate of Walter E. Swinson, deceased.

The principal question raised by the appeal of Adelaide Manning (No. 31, October Term, 1950) is whether, under the terms of a testamentary trust providing for the care and maintenance of a life beneficiary, the settlor intended to provide for the payment of the funeral expenses of such life beneficiary.

By the seventeenth paragraph of his codicil testator devised his residuary estate in trust, to pay the income "and also, in its discretion, . . . as much of the principal fund as in its opinion may be necessary for the care and maintenance, including medical and hospital treatment, of my aunt, Carrie Carr, for and during her natural life, and upon her death, . . . the remainder thereof, to [The Scholarship Fund of Reading]." The remainderman is an incorporated charity set up by testator to provide a student loan fund for worthy Negro students. Testator died July 5, 1947. His last will and testament dated May 26, 1947, and a codicil dated June 7, 1947, were duly probated. In addition to the residuary trust for her life care and support set up in the seventeenth paragraph, testator's aunt, Carrie Carr, was, by the fifth paragraph, given a life interest in one of testator's pieces of real estate—a house and lot at 233 Walnut Street, Reading, Pennsylvania. Upon the aunt's death the remainder in this property in fee was given to the aunt's daughter, Adelaide Manning.

At the audit of the account of the trustee, Adelaide Manning, daughter of Carrie Carr, in addition to claims for her mother's living expenses, presented a claim of $929, being the amount advanced for her mother's funeral after the trustee refused to pay on the ground that this claim presented a legal question. The court below refused to allow this claim, holding as a matter of law that the trust for care and maintenance of the

aunt did not cover her funeral expenses. In her appeal Adelaide Manning contends that the claim for funeral expenses of her mother, as life beneficiary of the trust, should have been allowed.

Where a trust is created for the support of a beneficiary, the question as to whether the trustee can pay the funeral expenses of the deceased beneficiary is one of interpretation of the terms of the trust in the light of the surrounding circumstances. Restatement, Trusts, §128, comment (e). "Ordinarily it would seem that if there are trust funds available for the purpose of paying funeral expenses, at least if the beneficiary left no property sufficient for the purpose, the trustee has the power and the duty to pay the funeral expenses of the beneficiary for whose support the trust was created." Scott on Trusts, Vol. 1, §128.4, p. 674.

The court below, in refusing to allow the claim for funeral expenses of the beneficiary, relied upon *Richey's Estate,* 251 Pa. 324, 96 A. 748. The Supreme Court's opinion does not contain any general discussion of the question, and it further appears that the wife, as life beneficiary, left an estate of her own in excess of $5,600. In that estate the will provided for the "maintenance and support" of the beneficiary; here the terms used are "care and maintenance." In *Hipple's Estate,* 30 Pa. Dist. 378, the will gave the wife the right to use both principal and income "for her care, support and maintenance." Distinguishing *Richey's Estate,* supra, 251 Pa. 324, 96 A. 748, Judge HENDERSON of the Orphans' Court of Philadelphia County stated (30 Pa. Dist. 378, 379) : "The will in that case only provided for the consumption of principal for the 'maintenance and support' of the widow, whereas the will before us authorizes such expenditure for 'her care, support and maintenance.' Who would take it upon his conscience to say that the testator by the use of the word 'care' did not intend to provide for her

burial? It is unthinkable that he would, in using this language, contemplate the possibility of a pauper's funeral for his wife so that volunteers could take the balance." See Hunter, Pa. Orphans' Court Commonplace Book, Trusts, Vol. 2, §12 (d), p. 1302.

In other jurisdictions the courts have interpreted a trust for support and maintenance as including an obligation to pay the reasonable funeral expenses of the beneficiary, especially where the principal could be used for maintenance and the beneficiary dies without funds. *Montgomery's Estate,* 129 Misc. Rep. 14, 221 N. Y. S. 319; *Frayer's Estate,* 155 Misc. Rep. 811, 280 N. Y. S. 657; *New Martinsville Bank v. Burlingame,* 116 W. Va. 122, 178 S. E. 690.

The life beneficiary was testator's aunt, his nearest relative mentioned in the will and one of the chief objects of his bounty. She lived with her daughter in an apartment in Brooklyn, New York, and had no estate of her own. She died at the age of sixty-seven, only fourteen and one-third months after testator. The remainderman, an incorporated charity, bears no relationship to the testator. The express mention and inclusion of medical and hospital expenses as "care and maintenance" does not have the effect of excluding funeral expenses from the general category of care and maintenance. Nor does the phrase "for and during her natural life" necessarily exclude an intention to pay the funeral expenses of the beneficiary. A construction of the will as a whole shows a clear solicitude for testator's aunt; this must be given effect over a narrow or legalistic interpretation of these particular phrases. Considering all the circumstances, including the language used, we think it was the intention of this settlor to provide for the payment of his aunt's reasonable funeral expenses. See *Reck's Appeal,* 78 Pa. 432; *Brightbill Estate,* 55 Dauph. 67. This claim should have been allowed.

The Reading Trust Company, trustee of the residuary estate under clause seventeen of the will, did not receive the corpus of the fund, amounting to $20,876.33, from the executrix of the estate of Walter E. Swinson, until July 26, 1948. Carrie Carr, the life beneficiary, died September 17, 1948, or fourteen and one-third months after the testator. Originally the trustee took the position that the beneficiary was entitled to no payments out of principal for support until July 3, 1948, the date the trustee was awarded the corpus. Although the trustee has now abandoned this view as untenable, it had, at the time of the audit, made no payments to the beneficiary except $150. At the audit of the account of the trustee, Adelaide Manning, daughter of the beneficiary, presented, and was allowed, a claim for beneficiary's living expenses covering the fourteen and one-third months between the death of testator and the death of the beneficiary. This claim amounted to $81.29 per month, and totaled $1,165.16, less amount received of $412.93.

In its appeal (No. 33, October Term, 1950) The Scholarship Fund of Reading questions the allowance of the claim of Adelaide Manning at $81.29 per month, asserting that it should have been $75 per month. On behalf of the Fund it is also argued that, in awarding claimant $81.29 per month, the court below failed to consider that the life beneficiary received rents of $336.89 from the house and lot in which she had a life interest under the fifth paragraph of the will and codicil. The court below did not err in allowing the claim for the support of the beneficiary at $81.29 per month rather than at $75 which the trustee paid for two months, and which amount is adopted by the remainderman. An officer of the trustee testified that $81.29 was a reasonable amount for the support of the beneficiary, and there is evidence that the trustee considered the sum of $114 per month, which had been requested by the beneficiary,

as reasonable. It is true the trust was discretionary in that the trustee had discretion in determining the amount necessary for the support of the beneficiary. But we think the trustee failed to exercise its discretion, or exercised it improperly in that it was based on an error of law. The discretion lodged in the trustee was a legal one and subject to the supervisory power of the courts. It was therefore competent for a court of equity to compel a proper exercise of that discretion and decree a reasonable amount as necessary for the support of the beneficiary. Scott on Trusts, Vol. 2, §§187.2, 187.3, pp. 992, 995; Restatement, Trusts, §187, comment (i); *Barrett's Estate*, 53 Pa. Superior Ct. 103, 107; *Walters' Case*, 278 Pa. 421, 123 A. 408; *Brown's Appeal*, 345 Pa. 373, 379, 29 A. 2d 52.

The receipt by the life beneficiary of $336.89 in rents from the real estate in which she was given a life interest under the fifth paragraph of the will and codicil in no way detracted from the right to care and maintenance given her by the seventeenth paragraph. In this respect the situation is analogous to cases where the beneficiary of a trust for support has a separate estate of her own. In such cases the beneficiary is entitled to a reasonable sum for her support although she has such separate estate. *Baylor's Estate*, 249 Pa. 5, 94 A. 442; *Richey's Estate*, supra, 251 Pa. 324, 328, 96 A. 748; *Minnich v. People's Trust, Savings and Deposit Co.*, 29 Pa. Superior Ct. 334. An officer of the trustee testified at the audit that their estimate of $75 a month for support was made after taking into consideration the fact that the beneficiary received the rents from the real estate. The result is that, even under the theory of the appellant, The Scholarship Fund of Reading, the allowance of $81.29 per month for support was not unreasonable; and we see no reason to interfere with this allowance.

The decree of the court below is modified to the extent of the claim of Adelaide Manning for funeral ex-

penses of $929, which shall be paid from the principal of the trust fund; and as modified the decree is affirmed; costs to be paid out of the trust fund.