THE CONNECTICUT BANK AND TRUST COMPANY *v.* HARTFORD HOSPITAL ET AL.

SUPERIOR COURT   HARTFORD COUNTY   FILE No. 166528

Memorandum filed March 17, 1971

*Day, Berry & Howard,* of Hartford, for the plaintiff.

*Shipman & Goodwin,* of Hartford, for the named defendant.

*Robert K. Killian,* attorney general, and *F. Michael Ahern* and *Bernard F. McGovern, Jr.,* assistant attorneys general, for the defendant attorney general.

DRISCOLL, J.   By his will dated June 5, 1943, Frederick S. Bliss created a life estate for the benefit of his sister, Grace E. Bliss, who was seventy-eight years old at the time the will was executed. Frederick S. Bliss died in December, 1943, with his will thereafter being duly admitted to probate by the Hartford Probate Court.   Grace E. Bliss died on February 12, 1966, at the age of approximately 102 years.

The plaintiff in this action, or its predecessor institution, was nominated as trustee, accepted the trust, was so appointed, and has acted and is continuing to act as trustee under the will.

Under article sixteenth of the will, the plaintiff was given in trust the testator's residuary estate to pay the income therefrom to the testator's sister Grace E. Bliss, for life. Upon the death of Grace E. Bliss, the plaintiff was directed to divide the corpus into three equal parts. Two of these parts, totaling $4,100,234.68, after the payment of $100,000 to the Wadsworth Atheneum were given to the defendant Hartford Hospital for construction of a wing thereto, to be known as the Bliss Wing.

Under article sixteenth of the will, the third portion, regarded as a separate fund, was divided into 126 equal parts which were subdivided into, among others, three separate funds, each of which contains 15 of the 126 parts, with these three funds, totaling 45 parts, to be held in trust for the maintenance of free beds at the Hartford Hospital for certain worthy persons whom the plaintiff selects and the hospital approves. The will authorizes the trustee to pay over any income not spent on free beds to the hospital "for the uses and purposes of said hospital."

With reference to this provision in the will, the exact language is as follows: "I direct and authorize the trustee to use and expend from the income of said three funds, or the income from 45/126ths of the whole fund, if remaining undivided, so much thereof as may be required for the maintenance of a free bed or beds at the Hartford Hospital, of Hartford, Connecticut, for the use and benefit of such worthy persons requiring hospital care as the trustee in its absolute discretion may appoint or select and such of those so chosen as shall be accepted by the hospital, as beneficiaries from time to time of the said free bed fund above named, such beneficiaries to be chosen by the trustee from persons residing within the limits of the County of Hartford, the first preference to be given to those residing in

the Town of Hartford and other adjoining towns, any unexpended income not so required for the beneficiaries named or selected by the trustee from time to time to be paid over by the trustee to the said Hartford Hospital for the uses and purposes of said hospital."

The income from this fund as just described, established in 1966 after the death of Grace E. Bliss, has averaged $20,000 a year, with none of this fund income used to date for free bed purposes but rather turned over in its entirety by the trustee to the Hartford Hospital, with the hospital holding the funds in an account known as the invested income fund, the purpose of this fund being to meet building costs of the hospital. The determination to so dispose of this income fund was made by the trustee right after the death of Grace E. Bliss.

In this action, the plaintiff The Connecticut Bank and Trust Company, seeks, pursuant to a directive of the Hartford Probate Court, a construction of the aforesaid article of the Frederick S. Bliss will as it relates to the trustee's actions as trustee, as described above and as so reflected in the account filed by the trustee with the Probate Court.

The trustee, in the exercise of its discretion and in consultation with Hartford Hospital, has determined that at present funds available for free beds for worthy persons from other sources exceed the need, and that other hospital expenses, in particular construction of the Bliss wing, are far more urgent. Arthur N. Johnson, vice president of The Connecticut Bank and Trust Company, the officer of the trustee in charge of the Bliss account, testified that in exercising its discretion the trustee took into consideration the resources available to potential recipients of free bed grants, including group insurance, medicare, and welfare benefits, and also took

into consideration the overwhelming emphasis in the Bliss will on the construction of the Bliss wing— almost two-thirds of the residuary estate being devoted to the Bliss wing. Johnson further testified that the trustee had no policy of excluding welfare recipients from the free bed funds but that the availability of welfare benefits was taken into consideration in exercising the trustee's discretion and that the trustee exercised its discretion "under the total context of the will." Johnson testified that the trustee had also investigated other free bed funds and health insurance plans.

The plaintiff trustee, supported by the defendant Hartford Hospital, has in effect requested permission from the court to transfer the income from the free bed fund to the construction fund for the Bliss wing.

The trustee admittedly has made no free bed money available. Although it has met with representatives of the Hartford Hospital with respect to the disbursement of those funds, it did not request that they forward any application for the benefits of the funds; the trustee made no effort to make the availability of the funds known to the public in general; nor has the trustee taken any steps to make the availability of the funds known to people who entered the Hartford Hospital; nor has the trustee requested any officer or employee of the Hartford Hospital to make the availability of the funds known; nor was the Hartford Hospital requested to forward to the trustee the names of any persons the hospital felt were qualified for the use of the funds.

In effect, shortly after the death of Grace E. Bliss, the funds that, by the terms of the will, would thereupon be available for free beds were turned over to the hospital for projected use for building purposes, were never used for free bed purposes, and in reality

were never held at any time for free bed purposes, nor were they ever made available for those purposes.

The plaintiff trustee argues that the completeness of the discretion given to the trustee in the administration of the trust could not be more broadly expressed. Article sixteenth of the will speaks of the maintenance of a free bed for such worthy persons requiring hospital care "as the trustee in its absolute discretion may appoint or select," and article seventeenth authorizes the trustee "to decide all questions that may arise as to construction of the terms used in the Will . . . and to employ such means as it shall deem best to carry out the true purpose and intent of the Will or any provision thereof." The trustee contends that from early times it has been "settled law in this state that when estate is given to trustees, to be disposed of by them at their discretion for the support of a cestui-que-trust, a court of equity will not interfere to control that discretion unless there has been abuse of the trust." *Smith* v. *Wildman,* 37 Conn. 384, 386.

With respect to this, it is noted that the will states that the trustee in its absolute discretion may appoint or select. It is the affirmative act of appointing or selecting in which the trustee has absolute discretion. Further, this power, by this language, does not become unlimited. "In speaking of the power of the trustees to close the museum, the testatrix used the phrase 'in their absolute discretion.' It is apparent from the presence of the word 'absolute' that she intended to give them considerable discretion. *Auchincloss* v. *City Bank Farmers Trust Co.,* 136 Conn. 266, 269 . . . . The use of the qualifying adjective, however, did not give unlimited discretion, and the grant of authority, broad as it was, did not necessarily remove the trustees from judicial supervision. Restatement, 1 Trusts § 187, comment j;

2 Scott, Trusts, p. 987. To the extent to which the trustees had discretion, the court will not attempt to control their exercise of it as long as they have not abused it. *Bridgeport* v. *Reilly*, 133 Conn. 31, 36 . . . ; *McCarthy* v. *Tierney*, 116 Conn. 588, 591 . . . . But the law will not tolerate its abuse, however great the creator of the trust intended the grant of discretion to be. 2 Perry, Trusts & Trustees (7th Ed.) p. 862." *Conway* v. *Emeny*, 139 Conn. 612, 619.

Simply stated, the trustee is given no dispositive, as distinguished from administrative, power. Further, just as in *Conway* v. *Emeny*, supra, the discretion authorized by the testator is not as absolute as it is claimed to be. The exercise of the discretion was circumscribed. The beneficiaries were to be worthy persons requiring hospital care, with first preference to be given to those residing in the town of Hartford and other adjoining towns. Significantly too, in the light of the immediacy with which the trustee abandoned the purpose of the trust, the testator apparently anticipated a procedurally lengthy and relaxed administration, since the reference was to the selection of beneficiaries from "time to time."

The plaintiff trustee contends that not only did it have complete discretion in the use of the funds in question but it was also obviously the intent of the testator primarily to benefit the hospital by the construction of the Bliss wing. The problem to this approach is the will itself, for the real question is not what the testator meant to say but what he meant by what he said. Effect is given to the intent which finds expression in the language used. *Fidelity Title & Trust Co.* v. *Clyde*, 143 Conn. 247, 253. Nor for that matter does the trustee have complete discretion. "The circumstance that the will gave to the trustee powers to invest trust funds 'in his ab-

solute discretion, unrestricted by any legislation limiting the authority of a trustee in investing the properties and funds of his trust' does not excuse him from a full and accurate accounting of his administration nor remove his administration of the trust from judicial supervision." *Willard* v. *McKone,* 155 Conn. 413, 420. "Courts will, of course, protect against an abuse of discretion in any equitable matter." *Connecticut Bank & Trust Co.* v. *Lyman,* 148 Conn. 273, 280.

It has been suggested that the procedure here followed by the trustee is one it is empowered to follow under the doctrine of approximation as adopted in Connecticut. A similar suggestion was considered by the court in *Bacon Memorial Home* v. *Bracken,* 21 Conn. Sup. 217, 219: "Our Supreme Court . . . has said: 'The modified doctrine of *cy pres,* or of approximation, which we have adopted, arises out of and is limited by the necessities of the particular case, and it exists only when, and in so far as, the specific method adopted by the testator for carrying his general intent into effect can no longer be executed.' *Newton* v. *Healy,* 100 Conn. 5, 10. In exercising its power under the doctrine of approximation, a court seeks just as nearly as may be to effectuate the intent of the testator. *Hayden* v. *Connecticut Hospital for Insane,* 64 Conn. 320, 324; *Shannon* v. *Eno,* 120 Conn. 77, 89."

The fact that at any particular time there are only a few, or even no, persons qualified to receive the benefit intended by a charitable bequest is not necessarily a reason for holding that it has failed, and, if no other disposition of the income is provided, it may be permitted to accumulate to await the time when proper beneficiaries are to be found. *Bacon Memorial Home* v. *Bracken,* supra, 220.

It has been suggested that, even if the situation did not meet the basic requirements of the application of the doctrine of approximation, a deviation might be permissible. Without regard to the merits of the ultimate purposes of the trustee, the court, by law, cannot give unbridled authority to the trustee. "A situation justifying a deviation does not exist in this case. Even if it did, subsequently occurring events cannot, under Connecticut law, change the construction of the will. *Redpath* v. *Auchincloss,* 132 Conn. 690, 695; *Bartlett* v. *Sears,* 81 Conn. 34, 41; *Weed* v. *Scofield,* 73 Conn. 670, 675. The evidence does not demonstrate circumstances so changed as to necessitate a rewriting of the McLean will, nor can it be said that not to accede to the 'total care' plan of the trustees will defeat or substantially impair the accomplishment of the purposes of the trust. The evidence does not demonstrate that there has been an intervention of unforeseen developments through which achievement of the trust purposes becomes impracticable or impossible because of the impact of one or another of the incident provisions of the trust." *Britton* v. *Killian,* 27 Conn. Sup. 483, 492.

The Supreme Court has laid down rigid rules for the guidance of trustees. The objects of the testator's bounty are definite and certain. His wishes can be carried out. *Hinkley Home Corporation* v. *Bracken,* 21 Conn. Sup. 222, 226.

The attorney general, as a named defendant in this action, has objected to the position of the plaintiff trustee on two grounds: (1) The proposed deposit of the funds in question was not intended by the testator; (2) the plaintiff trustee has not presented sufficient evidence to satisfy the doctrine of approximation. In this connection, the attorney general refers to § 3-125 of the General Statutes, in which the attorney general is directed to represent

the public interest in the protection of any gifts, legacies or devises intended for public or charitable purposes. It is the attorney general's position that the record discloses not only a complete failure on the part of the trustee to comply with the wishes and the direction of the testator as to the use of the fund income for free bed purposes but also a complete failure by the trustee to take positive steps of any nature whatsoever to carry out the purposes of the trust. The testimony adduced at the hearing on this matter supports the attorney general's position.

The quarrel is not with the purpose of constructing the Bliss wing—rather it is a question as to compliance with the terms of the trust.

With reference to an inquiry in the trustee's complaint, the court does not recognize a requirement to specify the various means by which the trustee should make the funds available or their availability known—or whether this should be done through the facilities of the Hartford Hospital or by means of private or public agencies—but in any event it should be done. "It was the duty of the trustees to conform strictly to the directions which the testatrix gave. Trustees have no powers not expressly or impliedly conferred on them by the terms of the trust. Restatement, 1 Trusts § 186. Their obligation to obey the instructions of the donor of the trust is the cornerstone upon which all other duties rest. 4 Pomeroy, Equity Jurisprudence (5th Ed.) § 1062; *Healy* v. *Loomis Institute,* 102 Conn. 410, 424 . . . . The failure of the trustees to apply the standard of public interest in reaching their decision to close the museum was a violation of their duty. They took unto themselves a power not granted them by the will. A trustee must always be loyal to his trust. 2 Scott, Trusts § 170. In his dealings with his beneficiary, he must not be influenced by the interest of a third party. 3 Bogert, Trusts & Trus-

tees, § 543; Restatement, 1 Trusts § 170, comment p. 'Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the "disintegrating erosion" of particular exceptions. (*Wendt* v. *Fischer,* 243 N.Y. 439, 444 . . .). Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd.' *Meinhard* v. *Salmon,* 249 N.Y. 458, 464 . . . . To be sure, the trustees did not act for personal advantage. Indeed, they appear to have been motivated by a desire to assist a worthy project. They were, nevertheless, trustees of the museum." *Conway* v. *Emeny,* 139 Conn. 612, 620.

In its reply to the cross complaint of the attorney general, the trustee denied any implication that it is the policy of the trustee automatically to exclude welfare recipients as potential beneficiaries of the Bliss trust.

As to the request for counsel fees and expenses, an assignment should be made for that determination.

Accordingly, the three questions propounded in the complaint and the question propounded in the cross complaint of the attorney general are all answered in the negative.