## Lee Trust

*William Kuhn,* for petitioner.

*P. Raymond Bartholomew,* for respondent.

ACKER, *J.*, December 18, 1974 — Through a motion for summary judgment in a matter arising from a petition for rule to show cause, this court is asked to affirm the contemplated action of the trustee to change beneficiaries based on the premise that alcoholism is now an illness totally unaffected by prior persuasion and activities of organizations espousing prohibition and that the trust goals are generally acknowledged to be unattainable. Wherefore, it is claimed the funds should be used for public betterment or welfare, i.e., an outpatient alcoholic clinic. The trust involved is one-third of the residual estate, the latter being approximately a half million dollars.

The facts giving rise to this unusual request are as follows:

On December 19, 1952, decedent executed her will. At that time, she was 93 years of age. On January 16, 1957, when 97 years of age, she executed a codicil which dealt only with a minor bequest. She died on May 18, 1958, then age 98. Her total gross estate was nearly a million dollars. By her will, after several specific cash bequests, testatrix created a testamentary trust of her residuary estate which she divided into three equal parts. First named was Lincoln University, followed by the American Association for the United Nations, Inc. in New York City for the promotion of the work of the United Nations, and, finally, that presently at issue, to the Prohibition Trust Fund Association in New York City ". . . to be used by it in the promotion of prohibition in the United States." However, only the net income of the moneys is to be used for the named beneficiaries as to all three trusts unless the

trustee desires to give the beneficiary the principal.[1]

The trustee does not request application of the cy pres doctrine. Rather, it is the position of the trustee that it has absolute discretion in terminating the payments and that it is merely requesting confirmation of that power.

The portions of the will to be considered are as follows:

1. By paragraph 7 (C), the net income devoted to the Prohibition Trust Fund Association is ". . . to be used by it in the promotion in the United States."

2. By paragraph 7 (D), the trustee is empowered to retain, in kind, all the property of which testatrix died seized and in its discretion from time to time sell any portion of the estate for the best interest of the estate. The trustee is empowered to invest the proceeds from such sales whether the investments be of legal investments or not. "It is my desire that said trustee shall have the power to exercise the best judgment of its officers and board of directors in maintaining the principal of said estate . . ."

3. By subparagraph (E) of paragraph 7, it is to be the sole judge of the necessity of such insurance and repairs as may be necessary to properly protect the principal of the estate.

---

1. Notice was given to the Attorney General of the pendency of the matter and of the time and date of argument upon the motion by certified mail on October 23, 1974, as required by Pennsylvania Supreme Court Orphans' Court Rule 5.5. John M. Duff, Esq., a Deputy Attorney General, responded, acknowledging receipt of the notice and waiving the 15-day notice rule. The office of the Attorney General did not appear or participate.

4. The following subparagraph is principally relied upon, being G of paragraph 7:

"In the event that any one of said beneficiaries, for whom the residue is held in trust, if the same is an organization or an institution, shall, because *of misjudgment* or *other cause*, be considered as *unworthy* of future receiving said distribution, said trustee may advise said institution of its reason for withholding payment in the future, and said trustee may pay such portion of the income from my estate to some other *similar institution* or *organization deemed more worthy* by said trustee to receive such benefits. The trustee shall be the *sole judge* as to whether or not such change shall be made, and the organization or institution affected thereby shall have no legal right to contest such change. Before making such change, however, the trustee shall make an investigation in the same manner in which I could do if living, and which it deems sufficient under the circumstances, and be reasonably satisfied that such a change should be made." (Emphasis supplied.)

5. Provision is made under sub-paragraph (H) of paragraph 7 that in the event an organization or institution is merged with another organization or institution, the income is to continue to be paid regardless of the name of the new organization or institution. This, however, is at the discretion of the trustee if it is determined that the organization is ". . . unworthy of further receiving the benefits herein provided."

6. Subparagraph (I) deals with the situation where an institution or organization benefiting under the trust shall cease to exist for any reason. In that event, the trustee has the power to pay the

moneys ". . . to a similar institution or organization deemed worthy of such payment by said trustee."

By subparagraph (J), testatrix states that it is her desire that the trust shall not be continued indefinitely. Recognizing ". . . the uncertainties of the continuance of organizations and the uncertainties of good management . . .," testatrix empowers the trustee ". . . when it believes that it is proper to do so, to pay to any one of the organizations or institutions receiving benefits from the fund, the proportionate part of the principal of said fund from which it is receiving the income." The payment is discretionary. "The trustee, however, shall have full and sole discretionary powers in this respect, as I do not want any litigation started by any beneficiary to compel the delivery to it of the principal of said fund . . ." Further, testatrix provides that none of the organizations or any substituted organization shall have a vested right in any portion of the principal. "In this connection it is my desire that said trustee shall have the same powers to exercise its discretion in all matters set forth in this trust, as fully as I could do if living." In this manner, testatrix hoped to continue the purpose of the trust.

## PROCEDURE

Through a petition for rule to show cause, to which was filed an answer and a responsive reply, the matter arises in court. A motion for summary judgment was filed after the conclusion of the pleadings and a request for certain admissions. Although provision is not made by the Supreme Court Orphans' Court Rules for a motion for summary judgment, rule 3.2 does provide for a petition, answer and reply. Rule 1 of section 3 (3.1) states that

the procedure in orphans' court is to be in conformity ". . . to the pleading and practice in equity in the local Court of Common Pleas." There are no local equity rules in Mercer County, nor is there any provision for summary judgment under the local orphans' court rules. However, this court takes the meaning of section 3, rule 1 when referring to the pleading in practice in equity in the local court of common pleas to mean the rules which must be enforced in that court whether they come from the Supreme Court or are locally adopted rules of the common pleas court of that county. So doing, it is found the Pennsylvania Supreme Court Rules in Equity do not have specific provision for summary judgment, but do provide by Pa.R.C.P. 1401 that the procedure shall be in accordance with the rules relating to the action of assumpsit. There, provision is made for a motion for summary judgment by Pa.R.C.P. 1035. Wherefore, the decisions applicable to that rule are regarded as binding in this matter in orphans' court.

Summary judgment is to be granted in the words of the rule if ". . . there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."[2] Rule 1035(b).

Such judgment should be granted only in the clearest of cases.[3]

The rule is to be strictly interpreted. In as far as possible, all intendments must be invoked against

---

2. Schacter v. Albert, 212 Pa. Superior Ct. 58, 239 A. 2d 841 (1968).

3. Kotwasinski v. Rasner, 436 Pa. 32, 258 A. 2d 865 (1969); Prince v. Pavoni, 225 Pa. Superior Ct. 286, 302 A. 2d 452 (1973).

the party attempting to secure the summary judgment.[4]

The burden of proof is placed upon the moving party.[5]

Summary judgments can be granted only in the "clearest of cases."[6]

Summary judgments can be rendered only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.[7]

A court may not take into consideration facts alleged in the briefs of the parties for briefs are not part of the record.[8]

---

4. McFadden v. American Oil Company, 215 Pa. Superior Ct. 44, 257 A. 2d 283 (1969); Toth v. Philadelphia, 213 Pa. Superior Ct. 282, 247 A. 2d 629 (1968).

5. McFadden v. American Oil Company, supra; Kent v. Miller, 222 Pa. Superior Ct. 390, 294 A. 2d 821 (1972).

6. Kotwasinski v. Rasner, supra.

7. Scheel v. Tremblay, 226 Pa. Superior Ct. 45, 312 A. 2d 45 (1973).

8. Erie Indemnity Company v. Coal Operators Casualty Company, 441 Pa. 261, 272 A. 2d 465 (1971). This rule is of particular import in the instant case for much of what the petitioner contends in its brief is unsupported by the record. Such statements as "the stated purpose for which the funds were to be used by the Prohibition Trust Fund Association is now obviously unattainable . . ."; ". . . that at one time an active Prohibition Political Party and an active effort to obtain national, state and local legislation to prohibit the sale and consumption of alcoholic beverages, that has in fact now been all but abandoned. The premise of prohibition of the sale and use of alcoholic beverages is now admittedly unattainable and the promotion of such premise an exercise in futility"; ". . . alcoholism is now recognized as an illness totally unaffected by prior persuasion . . ."; "the Prohibition Trust Fund Association has no public improvement program of its own, but rather simply redistributes the funds received from the Mary Lee

The basic premise of petitioner is contained in paragraph 8 of the petition:

"It is the opinion of the Trust Committee of the corporate trustee that time and experience has established that the purpose for which the Prohibition Trust Association was established and exists is no longer attainable, and that the continued payment of said net income from said trust to said association will not contribute towards the accomplishment of decedent's overall intention."

This is specifically denied in the answer of the Prohibition Trust Fund Association to which is added:

"On the other hand, it is averred that the said Prohibition Trust Fund Association is a viable institution, is functioning, and is in a better position to know how funds can be disbursed in the United States to promote prohibition, temperance and abstention from alcoholic beverages than the trustee. It is further averred that the Association has faithfully carried out the intent of Mary Lee by using funds received under the will of said decedent in the promotion of prohibition and temperance."

To supply the void of evidence on the above,

---

Trust without control over its ultimate use"; ". . . the limited purpose for which the Prohibition Trust Fund Association was to receive monetary benefits, promotion of prohibition in the United States, is no longer attainable . . ."; ". . . the accomplishment of the Sharon General Hospital Alcoholism Rehabilitation Center is well known, and requires no recital at this time"; and "since the manufacture, sale and use of alcohol cannot be prohibited as decedent had once desired, the services furnished by the Sharon General Hospital Alcoholism Rehabilitation Center represent the most worthy and only realistic approach to the problem of alcoholism at the present time."

petitioner, by brief, requests the court to take judicial notice of the fact that there was at one time an active Prohibition Political Party and an active effort to obtain national, state and local legislation to prohibit the sale and consumption of alcoholic beverages that has, in fact, now been all but abandoned. Further, that the premise of prohibition of the sale and use of alcoholic beverages is now admittedly unattainable, and the promotion of such premise an exercise in futility.[9]

Judicial notice may be taken by a court of common pleas of such matters which are self-evident and which are of such common knowledge that proof is rendered unnecessary.[10] The list of things covered by judicial notice is constantly expanding and no exact limit can be placed thereon.[11] This does not mean that all matters are the subject of judicial notice, for many are open to interpretation and, therefore, unavailable for judicial notice.[12]

9. The Sunday edition of the New York Times following the election of November 12, 1974, noted that the Prohibitionist Party in Alabama had elected several representatives to the legislature.

10. 14 P.L.E. §1, 280.

11. Pennsylvania Evidence by Brown, page 50. A review of the fields in which judicial notice has been permitted can be found in Pennsylvania Evidence by Brown, page 50 et seq., and 14 P.L.E. §1 et seq.

12. In Dutch Pantry, Inc. v. Shaffer, 396 Pa. 102, 151 A. 2d 621 (1959), an action in equity, the court was unwilling to take judicial notice that the phrase "Pennsylvania Dutch" had only one meaning or that it is composed of factors whose meaning can be apprehended in only one way. Instead, it took judicial notice of the historic and ethnic fact that the word "Dutch" itself is wrongly used, since it refers not to the only people who have a right to it, namely the citizens of the Netherlands, but to those whose ancestors were Swiss or Palatinate Deutsch or German. In Clark v. Allen, 415 Pa. 484, 204 A. 2d 42 (1964),

This court cannot take judicial notice that the efforts to prohibit the sale and consumption of alcoholic beverages "has in fact now been all but abandoned" in the entire United States. Even more, it cannot take judicial notice that the prohibition of the sale and use of alcoholic beverages is now admittedly unattainable and the promotion of such premise an exercise in futility. In this very County of Mercer, the Borough of Grove City containing Grove City College is "dry" where the sale of alcoholic beverages is denied, a fact of which this court can take judicial notice.

The United States Supreme Court in Powell v. Texas, 392 U.S. 514, 88 S. Ct. 2145, 20 L. Ed. 2d 1254 (1968), had an issue somewhat similar to that here presented for consideration. The contention was that because defendant was an alcoholic, it was cruel and unusual treatment to put him through the criminal justice system for public drunkenness. The majority through Marshall, *J.*, discussed the question of abstention, saying, page 2149: "Furthermore, the inescapable fact is that there is no agreement among members of the medical profession about what it means to say that 'alcoholism' is a 'disease'." The court notes a vital distinction which must be met in considering alcoholism between "loss of control" once an individual has commenced drinking and an "inability to abstain." The failure to make this most important distinction is error even though many au-

---

the court found it to be widespread common knowledge that countless patriotic Americans sincerely and sharply disagree as to what actions or words or policies aid the Communist cause or what show Communist tendencies or what amounts to an appeasement of Communism or exactly what it meant by "soft on Communism."

thorities regard persons in both categories as alcoholics. The court cited from E. Jellinek, The Disease Concept of Alcoholism II (1960), at page 2151: ". . . it cannot accurately be said that a person is truly unable to abstain from drinking unless he is suffering the physical symptoms of withdrawal." As to the need of abstention, the court recognizes, page 2151: ". . . it cannot be denied that the destructive use of alcoholic beverages is one of our principal social and public health problems."

With such authorities as the United States Supreme Court raising the question as to whether a person labeled as an alcoholic can abstain unless he is suffering the physical symptoms of withdrawal causes one to doubt the broad allegation of the petitioner that the promotion of prohibition is an exercise in futility. That is a conclusion this court cannot accept.[13]

The issue then becomes whether the trust invests the trustee with absolute discretion in the proposed change of beneficiary. Consideration must first be directed to the language of the trust that it is ". . . to be used by it in the promotion of prohibition in the United States." There is, of course, a great difference between prohibition and rehabilitation. The right to change beneficiaries as to the Prohibition Trust Fund Association ". . . is only because of 'mismanagement' or 'other cause,' it be considered as unworthy of further receiving said distribution." Although the trustee is made the sole judge as to whether or not the change shall be made, it is

---

13. Alcoholics Anonymous regards total abstention from the use of alcohol an absolute requirement to achieve recovery from the ravages of alcoholism. No one can seriously question the miraculous success achieved in many cases.

necessary that the trustee make an investigation in the same manner in which testatrix could do if living and if deemed sufficient under the circumstances to be reasonably satisfied that the change should be made. Even then, the substituted organization can only be some "other similar organization" or one "deemed more worthy." Petitioner has presented no evidence of its investigation. Rather, by brief, a number of conclusions unsupported by the record are drawn concerning prohibition in the United States.

The will creating the trust does attempt to deny to the beneficiary the right to have legal action to contest the change. It is, however, the trustee who is bringing the legal action and not the beneficiary.

Restatement 2d, Trusts, §187 provides that where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control except to prevent an abuse by the trustee of his discretion.[14] Further, by the Restatement 2d, Trusts, §187(e) discretion will not be interfered with by a court unless the trustee is exercising or failing to exercise the power, inter alia, by (c) failing to use his judgment or (d) acts beyond the bounds of reasonable judgment.

"The mere fact that the trustee is given discretion does not authorize him to act beyond the bounds of reasonable judgment.[15] The settlor may, however, manifest an intention that the trustee's judgment need not be exercised reasonably even where there

14. Similarly, III Scott on Trusts, §187, at page 1502 so provides.

15. Restatement, 2d, Trusts, §187 has been accepted in Pennsylvania: Briggs' Est., 150 Pa. Superior Ct. 66, 27 A. 2d 430 (1942); Brown's Ap., 345 Pa. 373, 29 A. 2d 52 (1942).

is a standard by which the reasonableness of the trustee's conduct can be judged." Restatement 2d, Trusts, §187(j).

Such language as "absolute" or "unlimited" or "uncontrolled" are frequently used.

"These words are not interpreted literally but are ordinarily construed as merely dispensing with the standards of reasonableness . . . the mere fact that the trustee has acted beyond the bounds of a reasonable judgment is not a sufficient ground for interposition by the court, so long as the trustee acts in a state of mind in which it was contemplated by the settlor that he would act. But the court will interfere if the trustee acts in a state of mind not contemplated by the settlor." Restatement 2d, Trusts, §187(j).

Where there is apparent absolute discretion in the trustee, the court is to look at whether the trustee is acting in that state of mind in which it was contemplated by the settlor that the trustee should act: Forrish v. Kennedy, 377 Pa. 370, 105 A. 2d 67 (1954); III Scott, Trusts §187, 1502 (2d ed. 1967).

It has been held that the discretion lodged in the trustee is a legal one and is subject to the supervisory power of the court: Swinson Est., 167 Pa. Superior Ct. 293, 74 A. 2d 485 (1950). Even such language as "full authority," "absolute discretion" or "unlimited discretion" do not give a trustee unfettered discretion in all instances. Resort must be had to the instrument itself to define the limits of a trustee's power, for much will depend on whether there is any standard by which the trustee's conduct can be judged: Forrish v. Kennedy, supra.

As this court reads the testamentary trust, it appears clear that testatrix wished to have her funds

applied to the furtherance of the cause of prohibition. She appreciated that organizations are not always well run. As mentioned in subparagraph (j), the two phrases used for changing beneficiaries are "mismanagement" or "other cause." There is no evidence of mismanagement nor is there evidence of "other cause" other than the conclusions of the trustee that prohibition is no longer a viable goal. However, this court interprets the words "other cause" to be used in the same context as "mismanagement." Even if found to be unworthy, the substituted beneficiary must be "some other similar institution or organization."

A somewhat similar factual situation arose in Connecticut Bank and Trust Company v. Hartford Hospital, 29 Conn. Sup. 158, 276 A. 2d 792 (1971). There, a $4,000,000 estate was to be divided into three equal parts. One of the equal parts was to be divided into 126 other equal parts to be held in trust for the maintenance of free beds at the Hartford Hospital for certain worthy persons whom the trustee selects and the hospital approves. The trustee was authorized to pay over any income not spent on free beds for the uses and purposes of the hospital. In fact, none of the moneys were used for free beds but rather were being held to be used to meet future building costs of the hospital. As in the instant case, the trustee requested of the court a construction of the will. It was claimed that the moneys were not required because funds from other sources exceeded the need for the poor for free beds. As claimed here, the trustee avowed to have complete discretion. The court held, however, that the trustees were not given unlimited discretion and the use of the words "absolute discretion" did not remove the discretion from judicial supervi-

sion. In referring to the claim that there were sufficient public moneys the court stated, page 795:

"The fact that at any particular time there are only a few, or even no, persons qualified to receive the benefits intended by the charitable bequeath is not necessarily a reason for holding that it has failed . . ."

The opinions of men change with the passage of time. Few will contend that prohibition is not a worthy objective. Rather, it is claimed that it is unattainable and, therefore, must be abandoned. At the moment, it may not be as popular as it was at the passage of the Prohibition Amendment to the United States Constitution in 1919. That does not in any way indicate that prohibition is dead or that testatrix intended to abandon her desire to foster prohibition through her estate.

If this court is incorrect in its interpretation of the meaning of "other cause," it is the conclusion of the court that the exercise of the discretion by the trustee is based upon a false premise, i.e., the objectives of prohibition are not unattainable. It has not been established that alcoholism is uncontrollable simply because it has been, by some, labeled as a disease. Justice Oliver Wendell Holmes, in a dissenting opinion in Gitlow v. People of New York, 268 U.S. 652, 673 (1925), wrote: "Every idea is an incitement. It offers itself for belief and if believed it is acted on unless some other belief outweighs it or some failure of energy stifles the movement at its birth."

The Prohibition Party was organized in the United States in 1869. In the succeeding years, it has had national candidates for the Presidency of the

United States.[16] In the general election of 1972, its candidates received votes for President in Alabama and California.[17]

Viewing the problem from the rocking chair of Mary Lee as she subscribed her name at the bottom of her will on December 19, 1952, at age 93, 22 years ago, a suggestion that the goals of prohibition would become unattainable might have well brought a short retort, "Humbug. Prove it to me." That is exactly what petitioners have failed to do.

Wherefore, it is the conclusion of the court that the prayer of the petition for rule to show cause must be denied and the rule dissolved.

## CONCLUSIONS OF LAW

1. That the trust naming the Prohibition Trust Fund Association was intended by testatrix for the promotion of prohibition in the United States.

2. That rehabilitation, although a worthy objective, is not synonymous with prohibition and is an entirely different objective than that intended by testatrix.

3. That petitioner has failed by competent evidence, admissions through pleadings or otherwise to establish that the objectives of prohibition in the United States are unattainable.

4. That petitioner has failed to establish by evidence, admissions or otherwise that alcoholism is a disease which cannot be controlled through abstention.

## DECREE NISI

And now, December 18, 1974, it is hereby ordered

16. The World Book Encyclopedia, Vol. P, page 718.
17. The World Almanac of 1974.

and decreed that the rule to show cause why petitioner as trustee of the Mary Lee Trust should not terminate the beneficial interest of the Prohibition Trust Fund Association in the net income of the Mary Lee Trust and substitute the Sharon General Hospital as beneficiary of said interest in the net income of the said trust is dissolved and the prayer of the petition denied.