## Frank Estate

*Joseph S. Hocky,* for accountants.

*Joseph J. Santarone,* guardian and trustee ad litem, p.p.

*Charles Widger,* for Commonwealth as parens patriae.

GUTOWICZ, *J.,* January 30, 1976—This trust arises under item third of the will of Betsy Frank, who died on August 27, 1953, whereby she gave the residue of her estate, in trust, to pay the sum of not more than $25 per week to or for her daughter, Celia Frank, for her support and maintenance, for life, and out of the balance of income, to pay not more than $25 per week to Alexander Frank, for life, and out of any balance remaining, to pay not more than $25 per month to Leonard Frank, for life, and upon the death of Celia Frank, leaving her surviving Alexander Frank and Leonard Frank, or either of them, to pay one fourth of the principal to the

Philadelphia Chapter of the Hadassah Organization and to pay the sum of $25 per week to the survivor of Alexander Frank and Leonard Frank, for life, chargeable first against income and then against principal, and upon the death of Celia Frank, Alexander Frank and Leonard Frank, to pay the balance of principal to the lawful issue of Leonard Frank, in equal shares, per stirpes, and in default of lawful issue, to pay the balance of principal to the Philadelphia Chapter of the Hadassah Organization.

Alexander Frank, an income beneficiary, died on April 27, 1957.

The account is of the fund awarded in trust by an adjudication of Bolger, J., dated October 11, 1957, and was filed by reason of the death of Celia Frank, an income beneficiary, on April 16, 1974.

The Philadelphia Chapter of the Hadassah Organization continues in existence. By reason of the death of Celia Frank, one fourth of the corpus is now distributable to that organization .

Leonard Frank, income beneficiary, survives. The trust continues for his benefit. He has two children, Steven Frank, who is sui juris, and Yvette Frank, an incompetent.

It has been held that where a trust is created for the support of a beneficiary, the question as to whether the trustee can pay the funeral expenses of the deceased beneficiary is one of interpretation of the terms of the trust in the light of the surrounding circumstances: Restatement 2d, Trusts, §128, comment (e). "Ordinarily, it would seem that if there are trust funds available for the purpose of paying funeral expenses, at least if the beneficiary left no property sufficient for the purpose, the trustee has the power and the duty to pay the funeral expenses of the beneficiary for whose support the

trust was created." II Scott, Trusts, §128.4, p. 674 (3d Ed. 1967).

A common oversight in the drafting of wills is the failure of the testator to provide for the funeral expenses of a life tenant. Therefore, if a testator intends that funeral expenses of a life tenant be paid, any language sufficiently clear to manifest the intent is sufficient, for the court will give effect to a testator's expressed intent with reference to the payment of a life tenant's funeral expense: Persun v. Decker, 6 Fiduc. Rep. 313 (1956).

In Swinson Estate, 167 Pa. Superior Ct. 293, 74 A.2d 485 (1950), it was held that, under the terms of a testamentary trust providing for the care and maintenance of a life beneficiary, the settlor intended to provide for the payment of the funeral expenses of such life beneficiary. A similar claim for funeral expenses was, however, denied by the Pennsylvania Supreme Court in Richey's Estate, 251 Pa. 324, 96 Atl. 748 (1916). That estate, however, can be distinguished from the instant case in that the life tenant left an estate of her own in excess of $5,600. The will in Richey's Estate provided for the maintenance and support of the beneficiary whereas in Swinson the terms used are "care and maintenance." This distinction proved crucial in Hipple's Estate, 30 Dist. R. 378 (1921), wherein Judge Henderson, of the Orphans' Court of Philadelphia County, found that a will providing for the "care, support and maintenance" of a beneficiary authorized burial expenditures. In the present will, the word "care" is omitted. Nevertheless, whatever merit the distinction made in Hipple's Estate may have had it was held in the more recent Swinson Estate, supra, that the construction of the will as a whole must be given effect over a narrow or legalistic interpretation of these particular phrases.

The court found that in other jurisdictions the courts have interpreted a trust for "support and maintenance" as including an obligation to pay the reasonable funeral expenses of the beneficiary, especially where the principal could be used for maintenance and the beneficiary dies without funds. In Frankenfield Estate (No. 2), 2 Fiduc. Rep. 661 (1952), citing Swinson Estate, supra, an intention of testatrix to pay for the funeral expenses of the life tenant, her brother, was found, where his estate was without funds to pay his funeral expenses and where the will showed a clear solicitude for the brother's interest.

By decree of court, dated June 4, 1975, Joseph J. Santarone, Esq., was appointed guardian ad litem for Yvette Frank, an incompetent, and trustee ad litem for unborn and unascertained interests.

The statement of proposed distribution sets forth two questions which require adjudication under Philadelphia County Orphans' Court Rule *63.1(c). First, it is stated that the State of New Jersey claims reimbursement for services rendered to Celia Frank during her lifetime. The claim is not admitted. Second, Leonard Frank claims reimbursement for $1,000 funeral expenses of Celia Frank, $300 for a footstone and $500 for perpetual care of her grave. Accountants, having a conflict of interest, take no position.

By letter, dated June 10, 1975, Lillian Kaltman, counsel for the Hadassah Organization, agreed that that organization would assume the cost of the funeral, footstone and perpetual care and that the sum of $1,800 covering these expenses should be deducted from its share of corpus now distributable.

The guardian and trustee ad litem report, as amended by letter, recommends that the account be confirmed as stated, that the claim of the State of

New Jersey for services be disallowed, that the funeral expenses of Celia Frank be paid out of the Hadassah Organization's share and that counsel fee in the amount of $750 be allowed, chargeable 25 percent against the outgoing share and 75 percent against the share continuing in trust.

Because of the failure of the State of New Jersey to appear at the audit and prove its claim for services, the claim is dismissed. A more difficult problem is raised by the claim of Leonard Frank for reimbursement of funeral and burial expenses of Celia Frank. Despite the assent of the Hadassah Organization to the payment of such expenses out of its remainder interest, the Attorney General, as parens patriae for charities, objects to the aforesaid payment of the $1,800 out of the share now distributable to the charitable remainderman. It is contended that the interest of Celia Frank in the trust was limited to a sum not to exceed a yearly average of $25 per week and that, therefore, the corpus as a matter of law cannot be used to pay her funeral and burial expenses.

The testamentary provisions relating to the interest of Celia Frank in the trust are set forth in paragraph third, subparagraph 1(A) as follows:

"My daughter, Celia Frank, is presently suffering from a mental ailment. So long as my said daughter shall live and shall be suffering from said ailment, the said Trustees shall pay over, for her support and maintenance, such sum as they shall deem fit, but not to exceed a sum that shall average, during any particular year, more than Twenty-five ($25) Dollars per week.

"Should my said daughter recover from her said ailment, and be so pronounced cured, by two recognized reputable physicians, specializing in psychiatry or nervous ailments, then from such date and

for so long a period of time as she shall so remain cured, the said Trustees shall pay unto her, direct, the sum of Twenty-five ($25) Dollars per week; but should the said illness recur and such recurrence be so pronounced by two recognized reputable physicians, specializing in psychiatry or nervous ailments, then during the period of such illness and the continuance thereof, payments for maintenance and support shall be made by said Trustees, for the benefit of my said daughter, in manner as first indicated herein. Payments directed to be made for the support and maintenance of my daughter herein or payable to her direct, shall be chargeable first to income and then to principal."

Evidence adduced at hearing showed that Celia Frank had been adjudged an incompetent since, at least, 1957 and had been institutionalized from that date until her death. At the time of death, she resided at the Senator Convalescent Home located in Atlantic City, N.J., and during the last years of her life she was the recipient of Medicaid assistance. Prior thereto, she was institutionalized at the New Jersey State Hospital in Ancora at which time she was classified as an Atlantic County indigent. Neither the records of the Department of Institutions and Agencies of New Jersey nor of the corporate trustee nor the personal knowledge of Leonard Frank, the individual trustee, show any evidence whatsoever that Celia Frank had any funds in her estate to pay funeral expenses. The court, accordingly, finds that Celia Frank left no property sufficient to pay for that purpose.

In Swinson Estate, supra, where the court found that the life beneficiary had no estate of her own, it further considered that she was testator's nearest relative mentioned in the will and one of the chief objects of his bounty and that, furthermore, the

remainderman, an incorporated charity, bore no relationship to the testator. The instant will shows a clear solicitude for the incompetent beneficiary's interest. She is the daughter of testatrix and the first named among the annuitants. Payments directed to or for her, unlike those to the other annuitants, are chargeable to principal should income be insufficient. The annuities to her son, Alexander Frank, and her grandson, Leonard Frank, are payable out of any balance of income, if there be such balance, after making the aforesaid payment to her daughter or for her support and maintenance. It is, likewise, significant that, upon the death of her daughter, the trust terminates as to one fourth of the principal and that share of the remainder is payable to the Philadelphia Chapter of the Hadassah Organization, an incorporated charity which bears no relationship to testatrix, as a memorial to her daughter to be set up in Palestine.

It is contrary to parental motives to reason that testatrix would intend to seal the fund against the cost of a coffin and grave for her daughter: Roland's Estate, 30 Dist. R. 242 (1920). It is unthinkable that testatrix would contemplate the possibility of a pauper's funeral for her daughter: Hipple's Estate, 30 Dist. R. 378. It is incredible that testatrix would intend that her daughter have a grave, unmarked and untended, in order that the fund could be used for a memorial to that same daughter in a far off land.

The court is not unmindful that the literal terms of the trust limit the discretion of the trustees to use the principal fund in providing for the support and maintenance of testatrix' daughter. Trustees are directed to pay over "such sum as they shall deem fit." Such payments are chargeable, should income be inadequate, to principal. It is repugnant to the

clear solicitude shown by testatrix for her daughter's interest, including her support and maintenance in life and her memory in death, that the terms restricting the sum payable for the benefit of her daughter to no more than an average of $25 per week should cause her to be denied decent burial. Moreover, significantly, the payment out of principal going to the charitable remainderman does not redound to the financial detriment of testatrix' grandson and surviving annuitant, Leonard Frank, and would not have redounded to the financial detriment of testatrix' deceased son, Alexander Frank, had he survived his sister. See Rosenthal Estate, 11 D. & C. 2d 517 (1956). Finally, it is clear that the phrase "so long as my daughter shall live" does not necessarily exclude an intention to pay the funeral expenses of the beneficiary: Swinson Estate, supra. We think that the will should be construed liberally. The estate of Celia Frank is without funds to pay her funeral expenses. Considering all the circumstances, including the language used, the court finds that it was the intention of testatrix to provide for the payment of her daughter's reasonable funeral expenses, including a footstone and perpetual care for her grave. The claim is allowed.

It is stated that notice of the audit has been given to all parties having a possible interest in the trust.

There was no other objection to the account which shows a balance of principal of $32,145.75, which, composed as indicated, is awarded one fourth to the Philadelphia Chapter of the Hadassah Organization as a memorial to Celia Frank to be set up in Palestine, less $1,800 to Leonard Frank for reimbursement for funeral expenses, a footstone and perpetual care for Celia Frank, less $187.50 counsel fee, and less trustee's commission to Fidel-

ity Bank of five percent on current market value, and the balance is awarded to Fidelity Bank and Leonard Frank, substituted trustees, less $250 which is awarded to Joseph J. Santarone, Esq., as compensation for his services as guardian and trustee ad litem, and less $562.50 counsel fee for the uses and purposes of the trust.

The account shows a balance of income of $1,746.09 which is awarded to the Fidelity Bank and Leonard Frank, substituted trustees, for the uses and purposes of the trust.

The above awards are subject to all payments heretofore properly made on account of distribution and to such taxes as may be due.

Leave is granted to the accountants to make all necessary transfers and assignments.

The certificate of the official examiner of his examination of assets awarded in further trust shall be submitted and, when approved, will be annexed.

And now, January 30, 1976, the account is confirmed nisi.